[Sac. No. 4215. In Bank.—March 25, 1931.]

NORMAN ROGERS, Respondent v. INTERSTATE TRANSIT COMPANY, Appellant.

Jesse W. Carter, Annette Abbott Adams and George Allan Smith for Appellant.

Devlin & Devlin & Diepenbrock, *Amici Curiae* for Appellant.

Carr & Kennedy for Respondent.

THE COURT.—The appeal in this cause first came on for hearing before the District Court of Appeal of the Third District. That court affirmed the judgment of the trial court and a petition for a transfer was thereafter filed and granted by this court. In an opinion later filed by us we adopted in the main the opinion of the District Court of Appeal and accordingly affirmed the judgment of the trial court. Thereafter a petition for a rehearing was filed, which was granted mainly for the reason that we desired

to give further consideration to the claim that the trial court erred to the prejudice of the defendant in giving plaintiff's instruction No. 23, which reads as follows: "The burden is upon the defendant to prove the negligence of plaintiff by a preponderance of the evidence, and in considering the evidence upon this point you will keep in mind that the law presumes that plaintff, at the time in question here, took ordinary care of his own concerns."

The particular portion of the instruction to which the appellant objects is that in which the court instructed the jury that "the law presumes that the plaintiff, at the time in question here, took ordinary care of his own concerns".

At the trial of this action plaintiff not only testified as to the circumstances of the collision between the car he was driving and the autostage of the defendant, but he produced witnesses who gave evidence, both direct and on cross-examination, of his acts and conduct just before and at the time of the collision. Whether the plaintiff took ordinary care of his own concerns while operating his car at that particular occasion was a matter of evidence established by the plaintiff and witnesses called by him in support of his claim that he did. In the face of this evidence there was no room for any presumption. If the evidence on his part showed that he was negligent, then it cannot be said that the jury, notwithstanding this evidence, might presume that he was not negligent, or that he took ordinary care of his own concerns, which amounts to the same thing. On the other hand, if this evidence showed that plaintiff was not negligent in the operation of his car at the time of its collision with defendant's stage, then that fact was before the jury, not as the result of any presumption, but in response to testimony of witnesses testifying in the case. In either event, the jury, in determining whether the plaintiff was guilty of negligence, would look to and be governed by the evidence before the court, and not by any presumption. Whatever the rule may be when evidence contrary to the presumption is produced by the adverse party, it is well established in this state that a presumption in favor of a party is entirely dispelled by the testimony of the party himself or of his witnesses. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1, 9 [210 Pac. 269].) In such a

case it was error, we think, for the court to instruct the jury as to the presumption that the plaintiff took ordinary care of his own concerns.

We question, however, whether this error was of so serious a nature as to justify a reversal of the judgment of the trial court. As already stated, the plaintiff and other witnesses produced by him, including the occupants of his car, testified in detail as to plaintiff's acts and conduct just prior to and at the time of the collision. Witnesses produced by the defendant gave their version of the collision, in which they testified as to the acts and conduct of the plaintiff in connection therewith. In the face of this direct and positive evidence it is hardly conceivable that the jury would have placed any great reliance, if any reliance at all, on any presumption as to plaintiff's conduct, even though they were told by the court that they might do so. In other instructions, and particularly in defendant's instructions No. 20 and No. 27, the attention of the jury was expressly directed to the evidence in this case, and they were instructed that they could not find a verdict in plaintiff's favor unless they found from said evidence that plaintiff was in nowise guilty of negligence which proximately contributed to said accident. Taking the instructions as a whole, we are satisfied that the jury could not have been misled by the one complained of and which contained the reference to the presumption that the plaintiff took ordinary care of his own concerns.

By section 4½ of article 6 of the Constitution, courts are restrained from reversing judgments on the ground of misdirection of the jury unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. The evidence in the case, both that on behalf of the plaintiff and that produced by the defendant, is quite full and complete upon all of the issues presented by the pleadings. While it might have sustained a verdict in favor of either party, that in behalf of the plaintiff was sufficient beyond any question to support the verdict rendered. We seriously question whether any different result would be attained by a retrial of the case under instructions with plaintiff's instruction No. 23 eliminated

therefrom. There was, therefore, no miscarriage of justice, and for that reason the judgment should not be reversed.

With the exception of what was said regarding the plaintiff's instruction No. 23 in the opinion previously rendered by us, we are satisfied that it correctly determines all issues presented on this appeal. We have, therefore, eliminated therefrom all discussion therein in reference to said instruction No. 23, and as thus modified we have adopted the same as the opinion of this court. It is as follows:

" 'This is an appeal from a judgment for damages for injuries sustained in an automobile collision.

" 'At 1 o'clock P. M. on March 11, 1927, the defendant's auto stage was being driven southerly along a straight stretch of level highway in Shasta county between Anderson and Cottonwood. It was occupying more than half of the concrete portion of the roadway and was traveling about thirty-five miles an hour. The plaintiff, who was an able-bodied man thirty years of age and who had been employed by Mr. A. J. Loggie for eight years as his auto mechanic and chauffeur, was driving his employer's Packard limousine in the same direction. The owner of the Packard, with a companion, occupied the rear seat.

" 'The concrete pavement was fifteen feet wide with a five-foot graveled shoulder sloping down to a shallow ditch on either side. At a point about one mile from Cottonwood the Packard car overtook the stage and undertook to pass it on the proper side. The highway was unobstructed. No other machines were in sight. Several times the horn of the Packard was blown and the plaintiff attempted to pass the stage, which failed to yield any portion of its position on the highway. Finally the plaintiff drove to the extreme left side of the roadway with about half of the machine traveling upon the graveled shoulder and repeatedly sounded the horn as a warning in passing the stage. As the Packard reached a point opposite the front of the stage the latter appeared to increase its speed. The Packard, however, succeeded in passing the stage and for a considerable distance continued to keep its position on the extreme left side of the roadway. The plaintiff testified in this regard: "I never attempted to turn in [front of the stage] at all. I kept going at the same rate of speed I was going while I was passing it." On redirect examination he said: "I

turned slightly on the pavement, following the left side, driving straight ahead.'' The machines were running about thirty-five miles an hour. There is a serious conflict of evidence as to just how the accident occurred. The appellant contends that the plaintiff cut in front of the stage, hooking his rear right fender over the left end of the stage bumper and thus diverted the course of the Packard from the highway into the ditch upon the right. There is, however, ample testimony to support the plaintiff's theory that after he had passed the stage and was proceeding along his proper side of the highway, the stage increased its speed and struck the Packard. The left angle of the stage bumper hit the rear right fender of the Packard, back of the wheel. The impact crumpled the mud guard and shoved the rear end of the car violently to the left. The plaintiff lost control of the machine and it pitched diagonally across the highway in front of the stage into a telephone pole on the right side of the highway, cutting down the pole, upsetting and wrecking the Packard and hurling the plaintiff from the car to the ground. The plaintiff's left foot, which was caught between the clutch-pedal and the brake-lever, was nearly torn off. He was taken to the hospital at Cottonwood, where his foot was amputated above the ankle. He is now forced to wear a cork foot and limb, to his great inconvenience, discomfort and humiliation. The jury rendered a verdict in favor of the plaintiff for the sum of $20,000. A judgment was duly entered for this amount, from which an appeal has been perfected.

" 'The appellant asserts that (1) the judgment is not supported by the evidence, (2) the plaintiff was guilty of contributory negligence, (3) the court erred in giving and refusing certain instructions, and (4) the amount of the judgment was excessive.

■ " 'There is substantial evidence to support the judgment. Three witnesses testified to substantially the foregoing statement of facts.

■ " 'The appellant contends that the plaintiff was guilty of contributory negligence in attempting to cut in ahead of the stage, and that in so doing the right rear fender of the Packard hooked over the left end of the front bumper of the stage and caused the Packard to be shunted to the right diagonally across the highway in front of the

stage. The implied finding of the jury that this was not true finds ample support in the evidence. A physical inspection of the fender in question discloses no evidence that the bumper was hooked in behind it, or that the fender was drawn out by such a forcible pull as would have resulted under such circumstances. On the contrary, it appears reasonable to conclude that the fender may have been indented by a severe blow from the bumper of the stage. This accords with other corroborating testimony. It is possible the indentation in the Packard fender may have been caused by its cutting in and striking the stage bumper. Either theory of the cause of the accident is reasonably possible. We are therefore bound by the findings of the jury in this regard.

" 'The portion of the highway upon which the stage was traveling at the time of the accident is material in determining the question of defendant's negligence. Mr. Purdy testified in this regard: "The stage was right over, I would say, in the middle of the highway." On cross-examination he said: "I would say that there was probably five feet between the stage and gravel [on the left side]. . . . I looked out and saw that we cleared the stage and were by the stage, and all at once this [stage] hit us." Mr. Loggie testified regarding the same subject: "I would say that [the stage] had at least two-thirds of the pavement." The portion of the highway upon which the Packard traveled after it succeeded in passing the stage is also important in determining whether the plaintiff was guilty of contributory negligence. Reading the record as a whole, it seems improbable that the Packard passed to the right of the central line of the highway prior to the occurrence of the collision. At least there is ample testimony to support the theory that it did not do so, and upon the contrary that the stage continued to travel with a portion of the vehicle upon the wrong side of the highway. Regarding the relative positions in which these two machines traveled upon the highway and the circumstances incident to the accident, Mr. Loggie testified:' " "Here follows a recital of testimony, unnecessary to be repeated, in support of the conclusion contained in the next paragraph, as follows:

" 'The foregoing testimony sustains the implied finding of the jury that the stage driver was guilty of negli-

gence in violating the provisions of section 126 of the California Vehicle Act which proximately caused the accident. It is apparent that if the stage was traveling with a portion of the vehicle on the left side of the concrete without changing its course after the Packard succeeded in passing it and that its speed was then accelerated so that it overtook the Packard traveling on its proper side of the highway and struck the fender with such force as to divert the course of the Packard, hurl it into the ditch and cause the injuries sustained by the plaintiff, this conduct on the part of the stage driver would amount to actionable negligence and render the defendant liable for damages which resulted therefrom. The evidence will sustain this theory of the accident.

" 'For the foregoing reasons the evidence will also support the implied finding that the plaintiff was not guilty of contributory negligence.

" ' 'Considering the pain, the discomfort, inconvenience and humiliation on account of the loss of plaintiff's foot and the consequent necessity of going through life with an artificial limb, we are of the opinion that the amount of the judgment was not excessive. . . .

" ' 'The only instruction offered on the doctrine of the last clear chance to avoid an accident is assailed as inapplicable to the facts of this case and as erroneous for the reason that two necessary elements are omitted from the hypothesis of the charge, to-wit: that the plaintiff was unable to extricate himself from the peril and, upon the contrary, that the defendant was aware of plaintiff's danger; that he was able to prevent the accident and failed to do so. This instruction reads:

" ' ' "As the court has already stated, the claim is made by defendant that plaintiff was guilty of contributory negligence. The court instructs you that although it appears to you that the contributory negligence of plaintiff was one of the proximate causes of his injuries, yet if the defendant's agent having charge of the stage, perceived that the plaintiff, by his own negligence, had placed himself in a position of peril from which he probably could not escape, and if perceiving plaintiff's perilous condition [he] failed to exercise ordinary care and prudence to avoid injuring the plaintiff and such negligence was also a proximate cause of plaintiff's injuries, he is entitled to recover." ' '

" 'The doctrine of the last clear chance applies when one is in imminent peril, but in the exercise of ordinary care is ignorant of the danger (*Hoy* v. *Tornich,* 199 Cal. 545, 553 [250 Pac. 565]), or knowing of the danger, is unable to extricate himself, and upon the contrary the accused is aware of the danger to the complainant and by the use of ordinary care may avoid injuring him, but fails to do so. (*Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359]; *Chappell* v. *San Diego Ry. Co.,* 201 Cal. 560 [258 Pac. 78].)'

"On the plaintiff's theory of the case, based on sufficient evidence in support thereof, the doctrine of the last clear chance was applicable to the facts. But it is contended that the foregoing instruction was lacking in two elements necessary to the application of the doctrine, viz.: that 'the driver of the bus could, by the exercise of ordinary care, have avoided the accident after he observed plaintiff in a position of peril, and that plaintiff himself exercised ordinary care for his own safety after he found himself in a position of peril'. The first element was in substance included in the instruction. The second element might well have been included, but the instruction as a whole was more elaborate and complete than the statement of the doctrine involved in *Townsend* v. *Butterfield,* 168 Cal. 564 [143 Pac. 760], which was held not to be prejudicial, especially since it was the duty of the defendant to prepare and present a fuller and more accurate instruction on the subject if it desired a better definition of the rule. (See, also, *Galwey* v. *Pacific Auto Stages,* 96 Cal. App. 169 [273 Pac. 866]; 14 R. C. L., sec. 56, p. 797.)

"Other instructions are complained of. The charge to the jury was full and fair, and we find no prejudicial error therein; nor does it appear that the plaintiff in his argument to the jury overstepped the bounds of propriety to such an extent as to constitute prejudicial misconduct, particularly in view of the admonition of the court with reference thereto."

The judgment is affirmed.

Rehearing denied.