[Civ. No. 4351. Third Appellate District.—October 26, 1931.]

ANNIE V. SHELTON, Respondent, v. WILLIAM W. ACKERMAN, Appellant.

F. C. Pugh and Butler, Van Dyke, Desmond & Harris for Appellant.

James T. Matlock, Martin I. Welsh and Anson H. Morgan for Respondent.

THOMPSON (R. L.), J.—This is an appeal from an order granting a new trial in an automobile casualty case.

The respondent brought suit for damages for the negligent killing of her husband resulting from a collision of automobiles which occurred at an intersection of streets in Red Bluff. The jury rendered a verdict in favor of the defendant. A new trial was granted on the ground of insufficiency of the evidence to support the verdict and judgment. The negligence of the defendant, which consisted in driving his machine on to the intersection of the streets at a high rate of speed, is not disputed. The sole question involved on this appeal is whether the deceased was guilty of contributory negligence as a matter of law.

The appellant contends the evidence shows without dispute that the deceased failed to look to his right before entering the intersection, and that he was therefore guilty of contributory negligence as a matter of law, so as to preclude the respondent from recovery.

All of the evidence upon this subject, which the record discloses, appears as follows: Mrs. McKay, who was also summoned as a witness for the defendant, testified in behalf of the plaintiff that she was sitting on the front porch of her home which is situated near the corner where the accident occurred, and saw both machines just prior to the collision. She said: "Mr. Shelton was driving at a moderate rate of speed." She testified: "Mr. Ackerman's car was coming at a high rate of speed." Another witness testified that the defendant's car "roared by" on its way to the intersection. Mrs. McKay further said regarding the conduct of the deceased just before he reached the intersection: "I noticed that he did not turn his head one way or the other, so I thought 'well, I will turn my head and look'. And I looked . . . south and Mr. Ackerman's car was coming at a high rate of speed. . . . Mr. Shelton kept on going, he didn't slow down nor did he speed up, he just kept at the same rate, he stayed just that way, sitting at the wheel, both hands on the wheel, looking straight ahead. . . . Mr. Shelton didn't give any signal, never took his hand off the wheel, never turned his head, was going straight ahead. . . . Now, if it were possible for him to see out of the corner of his eye, he might have done that, but he did not turn his head one way or the other."

The appellant himself testified in regard to the conduct of the deceased: "Q. When that car got into the intersec-

tion, what was the conduct of the driver of that car? A. He was looking straight ahead, driving right straight across, . . . I did not see him turn his head either way. . . . Q. Up to the very moment of the collision, do you know whether he looked at you or your car? A. I don't know whether he did or not, but I imagine he had seen me the same as I had seen him. Nothing to obstruct the view, broad daylight, and I don't know as I had to turn much to see him; by looking straight ahead I could see him, and I figured he could see me."

A wide discretion is accorded trial courts in granting or denying motions for new trials where the application depends upon the sufficiency of evidence. (2 Cal. Jur. 940, sec. 554.) Under such circumstances, the order of the court will not be disturbed except for a clear abuse of discretion.

In the present case, we are unable to say, as a matter of law, the deceased was guilty of contributory negligence for failure to look in the direction whence machines should be expected to approach an intersection of streets. Mr. Shelton rode alone in his Ford machine. He was killed as a result of the accident. He was unable to speak in his own behalf regarding his conduct. It is not a question as to whether he turned his head before he reached the intersection. It is merely a question as to whether he exercised due caution to look in the direction from which he should have anticipated danger. Two witnesses furnish all the evidence which is disclosed on this subject. One of them says he did not turn his head one way or the other; he looked straight ahead. The fact that he did not turn his head does not foreclose the possibility that he looked to his right. Common knowledge teaches one that a person of good eyesight possesses a wide sweep of vision without turning the head. The burden was on the defendant to prove contributory negligence of the deceased. This same witness who testified that the deceased did not turn his head recognized the truth of the scope of his vision, for she said he might have looked out of the corner of his eye. The defendant truthfully said: "I imagine he had seen me the same as I had seen him. Nothing to obstruct the view, broad daylight. . . . By looking straight ahead I could see him, and I figured he could see me." The evidence, therefore, is to the effect that the deceased could have seen the

defendant's car approaching without turning his head. In support of the order granting the new trial we must assume that the deceased did see the defendant's car approaching. If so, it was unnecessary for him to turn his head. He may have misjudged the rate of speed at which the defendant's car was running. He had a right to assume he was running at a lawful rate of speed. He may have erroneously assumed he would have ample time to pass the intersection before the defendant arrived. Evidently the defendant was running at an unusually rapid rate of speed. One may easily be deceived as to the rate of speed of another car. At least the court had a right to assume from the evidence that the deceased exercised due caution. The order granting a new trial may therefore not be disturbed.

In the case of *Oberholzer* v. *Hubbell*, 36 Cal. App. 16 [171 Pac. 436], a judgment against the driver of an automobile for colliding with a horse and buggy at an intersection of streets was sustained, although the driver of the buggy admitted she looked straight ahead and did not look to her right upon approaching the intersection, and did not see the automobile. It was contended she was guilty of contributory negligence. The court says:

"It was developed upon the cross-examination of the plaintiff that there was nothing to obstruct her view . . . of the approach of the defendant's automobile; that neither she nor her husband looked to see if other vehicles were approaching; and that if they had looked in the direction from which the defendant's automobile approached they could have seen it and 'would have stopped'."

In that case the defendant's machine came suddenly from behind another vehicle and collided with the buggy driven by the plaintiff. It was held the failure of the plaintiff to look for approaching vehicles was not necessarily the proximate cause of the accident. So in the present case the high rate of speed at which the trial court was warranted in assuming the defendant approached the intersection, may be considered in determining whether the deceased exercised due caution.

The respondent is in error in assuming the presumption which is announced in paragraph 4 of section 1963 of the Code of Civil Procedure, that a person takes ordinary care of his own concerns, may be considered under the circum-

stances of this case, to raise a conflict of evidence regarding the contributory negligence with which the deceased is charged, unless we assume the evidence to the effect that the deceased did not turn his head is not conclusive of the fact that he did not look toward his right. Strictly speaking, the record in this case is devoid of any evidence as to whether the deceased did or did not actually look to his right. If there is a total absence of evidence as to whether the deceased exercised due caution by looking to his right then the presumption heretofore announced may be considered with all the other evidence in determining whether he was guilty of contributory negligence. Mrs. McKay was called in behalf of the plaintiff, and gave the only evidence upon which the appellant now relies to establish his claim of contributory negligence. The Supreme Court said in the recent case of *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 Pac. 884, 886]:

"When the evidence contrary to the presumption is produced by the adverse party, it is well established in this state that a presumption in favor of a party is entirely dispelled by the testimony of the party himself or of his witnesses." · (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529].)

But it is unnecessary to resort to a technical application of the rule respecting a consideration of the presumption above referred to. It is unnecessary to the determination of this case. There is ample testimony to support the trial court's conclusion that the evidence was insufficient to support the verdict in favor of the defendant. The order granting a new trial should therefore be sustained.

The order is affirmed.

Preston, P. J., and Plummer, J., concurred.