[Civ. No. 2676.   Fourth Dist.   Mar. 27, 1942.]

NORMAN MAASKANT, a Minor, etc., et al., Respondents, v. GEORGE MATSUI et al., Appellants.

Chester O. Hansen, John Said and William C. Crossland for Appellants.

Rae B. Carter, John D. Chinello and John F. Pryor for Respondents.

SCHOTTKY, J. pro tem.—Defendants appeal from a judgment entered on a verdict rendered against them in an action for the death of Harry Maaskant, arising out of an automobile accident in which an automobile operated by said deceased collided with an automobile owned by appellants Shinagawa and Matsui and operated by appellant Matsui. Appellant

M. D. Hopper was named as a co-defendant and judgment was entered against said appellant upon the theory that at the time of the fatal accident appellant George Matsui was an employee and agent of appellant Hopper, and appellant Hopper was therefore liable under the doctrine of *respondeat superior.*

No brief has been filed by appellants Matsui and Shinagawa, but by stipulation said appellants are resting their appeal upon the briefs of their co-appellant Hopper. No claim is made in the briefs filed that the evidence is insufficient to support a finding of actionable negligence on the part of appellant Matsui, but it is claimed by appellants that the undisputed evidence shows that at the time of the accident appellant Matsui was not in the employ of appellant Hopper but was an independent contractor.

Before proceeding to consider this contention it is well to quote from *Juchert* v. *California Water Service Co.*, 16 Cal. (2d) 500 [106 Pac. (2d) 886], where our Supreme Court said at page 503:

"As is always true on such appeals, all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences must be indulged in to uphold the verdict, if possible. It is elementary that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. And when two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury or trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183]; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]; *Wing* v. *Kishi*, 92 Cal. App. 495 [268 Pac. 483].)"

Appellants quote numerous excerpts from the testimony which, they assert, show that Matsui was not an employee but was an independent contractor. They contend that the testimony shows that appellant Matsui merely supplied a Japanese crew of laborers to appellant Hopper and other farmers, and was free to come and go as he pleased; that he was not told by appellant Hopper as to the manner in which the work should be done but merely that there was a certain piece of work to be done and the number of men needed; and that on

the morning of the accident appellant Hopper's foreman told appellant Matsui that it was too windy to continue sulphuring, and that the Japanese crew should be put to some other work, and while Matsui was on his way to stop the crew from sulphuring the accident occurred.

Appellants then proceed to quote numerous authorities stating the well-settled rules as to the distinction between an employee and an independent contractor. It is not necessary to refer to these because the most casual reading of the record shows that appellants have omitted to refer to testimony which clearly gave the jury the right to infer that appellant Matsui was an employee of appellant Hopper, and we are, of course, not concerned here with mere conflicts in the testimony.

The following appears in the testimony of appellant Matsui:

"Q. Now, on the 7th day of May, 1940, you were working as foreman of the Japanese crew on the Lucerne Vineyard, weren't you? A. Yes, I was. . . . Q. At the time this accident happened you were on your way to take the men off of the sulphuring job, weren't you? A. Yes. Q. And that was because of a wind that had come up that morning, wasn't it? A. Yes. Q. Those were Japanese laborers that you were going to, weren't they? A. Yes. Q. They were men that were doing work on the Lucerne Vineyard, weren't they? A. Yes . . . Q. Just before you left on that trip you talked to Mr. Oscar Hinton, the foreman of the Lucerne Vineyard, didn't you? A. Yes. Q. You talked to him at or near the blacksmith shop on the Lucerne Ranch, didn't you? A. Yes. Q. And it was at his direction that you went down there to tell these men to stop sulphuring, wasn't it? A. Yes. . . . Q. How many Japanese laborers were at work on the Lucerne Vineyards that day, May 7th, 1940? A. I believe twelve . . . Q. And you were paid the same rate as the other employees, weren't you? A. Yes . . . Q. It was part of your duty to supervise the work of the Japanese laborers on the Lucerne Vineyards, wasn't it? A. That's correct . . . Q. . . . When you did any work on the place you got paid by the hour for that and that went in separately, didn't it, on your time sheet? A. Well, that's the way I got paid, I used to do my work, so many hours a day. Q. But on the day of this accident you didn't do any work, did you? A. Yes, I was working on the day of the accident. Q. Did you turn in any time for yourself to Mr. Hinton or Mr. Adams on the day of this accident? A. Well, I put down my time up to the time of the accident . . . Q. Mr. Matsui, what is your business or occupation? A. I am foreman at

the Lucerne Ranch. Q. Were you so employed on the 7th day of May, 1940? A. Yes . . . Q. And how much were you being paid per day for the work that you were doing? A. I was paid the same prevailing wages. Q. That is twenty-five cents an hour? A. Yes . . . Q. Now, Mr. Matsui, at the time of this accident you were on your way from one ranch belonging to the Lucerne Vineyards, or Mr. Hopper, to another ranch, is that correct? A. I was going to a ranch of Lucerne Vineyards to stop the boys from working. Q. That was on account of too much wind to be sulphuring? A. Yes. Q. And you were under instructions from Mr. Hinton, is that correct? A. Yes.''

It is quite apparent from the foregoing that the evidence is sufficient to support the finding that appellant Matsui was an employee of appellant Hopper.

Appellants next contend that the trial court committed error in giving an instruction on the presumption of due care. The instruction given was as follows:

''Since you may accept a presumption satisfying your minds rather than spoken testimony which does not produce conviction in your minds, you are further instructed that there is a presumption that every man obeys the law and takes ordinary care of his own concerns; therefore, the presumption in this case is that the decedent Harry Maaskant was traveling at a lawful rate of speed and was on the proper side of the highway at all times, and was at all times exercising ordinary care for his own safety. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until, and unless it is overcome by satisfactory evidence.''

Appellants argue that the giving of this instruction was error ''for the reason that from the testimony of plaintiffs' own witnesses, the presumption of due care on the part of decedent Harry Maaskant was dispelled and disappeared from the case entirely.'' Appellants then quote testimony of respondents' witnesses to show that the intersection at which the accident occurred was an obstructed intersection, and then quote testimony which, they assert, shows that decedent was approaching at a high rate of speed. There was no testimony as to the rate of speed at which decedent was traveling, but appellants refer to the testimony of a witness who heard the roar of the exhaust of decedent's automobile as indicating a high rate of speed. There is, however, testimony of the same witness ascribing the roar to a hole in the muffler. No witness

produced by plaintiffs saw the accident, the only testimony of plaintiffs' witness being that he saw the top of decedent's automobile the instant of the collision, but had not seen it before.

In the case of *Mar Shee* v. *Maryland Assurance Corporation,* 190 Cal. 1 [210 Pac. 269], our Supreme Court said, at page 9:

". . . a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case."

The testimony of plaintiffs' witnesses in this case falls far short of establishing by uncontradicted testimony that the facts proved are so irreconcilable with the presumption of due care on the part of the deceased as to dispel the presumption and cause it to disappear from the case.

In the case of *Westberg* v. *Willde,* 14 Cal. (2d) 360 [94 Pac. (2d) 590], the court said, at page 367:

"We think it well to state here that in our opinion there is a substantial difference in the situation before a court where the question of the plaintiff's negligence is in issue, and both plaintiff and his witnesses testified to all his acts and conduct at the time of his alleged negligence, from a situation where the acts and conduct of a decedent are the issues before the court. In the first instance, all possible facts both in favor of and against the alleged negligence of the plaintiff are before the court, and it is difficult for us to perceive how any presumption as to his conduct can add to or detract from this evidence. Surely if this evidence conclusively supports the claim that he was negligent, then, according to our decisions cited above, the presumption as to his conduct has been dispelled. On the other hand, if the plaintiff has testified respecting his acts and conduct, and his testimony and that of his witnesses showed that he used ordinary care for his safety, an instruction to that effect would not be of any assistance to him; but if such evidence did not clearly and unmistakably clear him of the charge of negligence, then an instruction which would place his testimony in a more favorable light than it would be without such instruction would seem to be uncalled for, if not improper. In such case the giving of any

instruction as to the presumption of plaintiff's conduct would seem to be of doubtful propriety. It has, however, been held that the giving of such an instruction under the circumstances just related was not prejudicial. (*Tuttle* v. *Crawford*, 8 Cal. (2d) 126 [63 Pac. (2d) 1128]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 38, 39 [297 Pac. 884].) But in the other situation, where the acts and conduct of a deceased person are the subject of inquiry, and the testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, unless such testimony meets the requirement of the rule in the Mar Shee case, and other cases decided by this court following the Mar Shee case, an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is not only proper but this court in an unbroken line of decisions, has sustained the giving of such an instruction. (*Ellison* v. *Lang Transp. Co.*, 12 Cal. (2d) 355 [84 Pac. (2d) 510].)''

In the case of *Stroh* v. *Bauman*, 37 Cal. App. (2d) 241 [99 Pac. (2d) 337], this court said at page 244:

''There has been some confusion in the decisions on the propriety of instructing the jury on the substance of section 1963, subdivision 4, of the Code of Civil Procedure. That confusion has been settled by the case of *Westberg* v. *Willde*, 14 Cal. (2d) 360 [94 Pac. (2d) 590]. That case holds that such an instruction should not be given where the party attempting to invoke it is still living and all circumstances are proved and where 'all possible facts both in favor of and against the alleged negligence of the plaintiff are before the court' because 'it is difficult for us to perceive how any presumption as to his conduct can add to or detract from this evidence'; that it is in a case where a party has died that the presumption may come into play.''

The instruction now challenged by appellants contained the qualification that the presumption was a species of evidence and ''shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence''. The jury was clearly told that the presumption could be overcome by satisfactory evidence. Under the authorities cited the instruction was properly given by the court.

Appellants' third contention is that the court erred in refusing to give the following instruction offered by them:

''You are instructed that any negligence, however slight, on the part of Harry Maaskant, which directly and proximate-

ly contributed to the happening of the accident involved in this case, bars a recovery by the plaintiffs.''

This contention is utterly lacking in merit because the jury was very fully instructed upon the subject of contributory negligence, and furthermore, at the request of appellants, the court gave the following instruction:

''You are instructed that if you find from the evidence that at the time and place of the accident involved in this case Harry Maaskant drove and operated the Chevrolet pickup automobile, then and there being operated by him, in a negligent manner, and if you further find that such negligence, however slight, directly and proximately contributed to the happening of the accident, then I charge you that such negligence, however slight, on the part of Harry Maaskant bars a recovery by the plaintiffs in this case.''

Appellants' final contention is that one of the counsel for respondents was guilty of prejudicial misconduct in conversing with a juror during a recess, and that the court erred in denying appellants' motion for a mistrial. It appears that during the recess a juror, who remained in the courtroom, asked counsel, in the presence of one of the co-counsel for appellants, a question regarding a map which had been introduced in evidence, and was told that the testimony of the engineer who drew the map covered that. The matter was called to the attention of the trial court and the court heard the matter in the absence of the jury and denied the motion and thereafter properly instructed the jury to disregard it. While we, of course, feel that counsel in a case should at all times be solicitous to preserve not only the substance of justice, but every appearance of propriety, and should keep away from jurors during recesses and should have no conversation with them beyond the usual salutations, yet it is quite clear to us that there was no misconduct in this case. The incident was in fact precipitated by the juror who asked the question and it appears that counsel was merely endeavoring to answer the juror without seeming to be discourteous. He said nothing that could have given the juror any information which he did not already possess.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied April 23, 1942, and appellants' petition for a hearing by the Supreme Court was denied May 25, 1942.