[Civ. No. 17756.    First Dist., Div. Two.    Mar. 17, 1958.]

EDITH R. HUGHES, an Incompetent Person, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Hoberg & Finger and Applebaum, Mitchell & Bennett for Appellant.

Dion R. Holm, City Attorney, and C. Wesley Davis, Deputy City Attorney, for Respondent.

KAUFMAN, P. J.—Plaintiff Edith Hughes, an incompetent, through her guardian Robert D. Harris, brought this action against the city and county of San Francisco to recover damages for personal injuries sustained in an accident involving a municipal trolley bus.    The first trial in March 1956, resulted in a verdict in favor of the defendant.    Plaintiff's motion for a new trial was granted on several grounds. The second trial in December 1956, also resulted in a verdict in favor of the defendant.    This appeal is taken from the judgment entered on such verdict.

The sole question on appeal is plaintiff's contention that the trial court, in giving and refusing to give certain instructions, committed prejudicial error. We have concluded that this contention must be sustained.

On the date of the accident, the plaintiff was 89 years old. Her general physical condition, eyesight and hearing were good. She was remarkably alert for a person of her years and capable of taking care of herself. She lived alone at the corner of Bush and Leavenworth Streets and was in the habit of walking downtown every day for lunch or a movie. There was conflicting testimony as to the extent of the injuries caused by the accident. While convalescing in a nursing home from the injuries to her right leg caused by the accident, she fell in January 1955, and broke her left hip. Surgery to correct this condition was unsuccessful. Her mental deterioration came on about the time of her second fall and may have been due to her physical condition or her age. She could not appear or testify by deposition at either trial.

The accident occurred on July 16, 1954, about 2:30 p. m. at the intersection of Grant Avenue and Sutter Streets in the city of San Francisco. Sutter Street runs east and west; Grant Avenue, north and south. There are red and green traffic signals on all four corners of the intersection. The plaintiff was walking south across Sutter street in the east crosswalk. The trolley bus driven by an agent of the defendant, was proceeding westward along Sutter Street.

Various eye-witnesses testified about the circumstances of the accident. Henry Petrin was standing at the northwest corner of the intersection waiting for the red signal to turn green so that he could proceed eastward across Grant Avenue toward Kearny Street. His attention was attracted by the noise of the motor of a bus which was about five feet from the east crosswalk on Sutter Street. He heard a scream and then noticed an elderly lady about 10 to 12 feet from the curb, close to the bus. Then, ". . . the bus whizzed by her, and she apparently went backwards, and she lost her balance, and her two feet just went from under her, and one leg . . . the rear wheel of the bus ran over the lady's one leg, and I saw that too." He estimated that the speed of the bus was 10 to 12 miles per hour. He did not know whether the woman was in the crosswalk when she was hit. On cross-examination, it was brought out that this witness had been convicted of a felony.

John Coletti was working at his desk on the second floor of the building on the northwest corner of the intersection. He heard a loud scream, looked out the window and saw a woman in the street about two feet from a bus going 10 to 15 miles an hour in the inside lane of Sutter Street; the woman started to spin clockwise and fall to the right; the bus ran over her leg and came to a stop within 8 or 10 feet. After the accident, the woman lay in the street, with her head generally northeast, her feet southwest and a part of her legs on the crosswalk.

Mrs. Miller was standing at the northeast corner of the intersection, along with the plaintiff and about 35 other people. She wanted to walk south across Sutter Street, in the same direction as the plaintiff, but was waiting for the red light to turn green. At this time, the signal for east-west traffic on Sutter Street was red. She saw the plaintiff step off the curb and the bus enter the crosswalk simultaneously and she screamed. "Mrs. Hughes walked out into the street, and her left knee collapsed and she fell on the street, and the rear part of the bus ran over her." On cross-examination, it was brought out that in a prior statement to an independent investigator employed by the plaintiff's attorney, this witness had stated that the bus had been stopped to let stragglers across in the west crosswalk, and ran over the plaintiff's leg just as it had started up again; that the bus swerved to the right upon crossing the east crosswalk; that she had been unable to see the traffic signals at the time of the accident; that the plaintiff had antagonized her by pushing ahead at the intersection.

Henry Webb, the driver of the bus, testified that as he left the passenger loading zone on the west side of Kearny Street and was proceeding westward along Sutter toward Grant, the traffic signals at Grant Avenue were red. He saw both the signals on the northwest and northeast corners change to green when his bus was about 40 to 50 feet from the east line of the east crosswalk on Sutter Street. He had an unobstructed view of the east crosswalk. As he saw no pedestrians in the crosswalk, he continued to move across Grant Avenue. "In the intersection the back wheel seemed to have rolled over something . . . something had happened, and I stopped the coach immediately and climbed off of the coach to see what happened." He did not hear a scream or see the plaintiff before the impact.

Elva Washington, a passenger on the bus, testified that as the bus approached Grant Avenue and was about five feet from the east crosswalk, the signal was green and did not change until after the bus stopped after the accident. As the bus proceeded through the intersection, she felt a sort of a bump.

John F. Elb, the police officer who subsequently investigated the accident, testified that after the accident, the plaintiff first sat and then lay on the west line of the east crosswalk with her head and feet facing west about 12 feet from the north curb. The right edge of the bus was also 12 feet from the north curb line; the rear wheels of the coach were 13 feet west of the plaintiff.

■ Plaintiff's principal contention is that the court committed reversible error in giving the jury an instruction which also extended to the defendant the disputable presumption of due care. (Code Civ. Proc., § 1963, subd. 4.) The court gave the following instruction on its own motion:

"At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption, and any evidence, that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof."

Plaintiff argues that because the defendant offered evidence which disclosed his acts and conduct immediately before and at the time of the accident, it was error to give the defendant the benefit of the presumption. (*Ford* v. *Chesley Transport Co.*, 101 Cal.App.2d 548 [225 P.2d 997]; *Stout* v. *Southern Pacific R. R. Co.*, 127 Cal.App.2d 491 [274 P.2d 194]; *Rozzen* v. *Blumenfeld*, 117 Cal.App.2d 285 [255 P.2d 850]; *Nunnemaker* v. *Headlee*, 140 Cal.App.2d 666 [295 P.2d 438]; *Burns* v. *Churchill*, 152 Cal.App.2d 491 [313 P.2d 575].) In *Rozzen* v. *Blumenfeld, supra,* at page 287, the court said that the giving of such an instruction "is error when thereby the benefit of the presumption of due care is extended to a party who by his testimony or by evidence introduced in his behalf

had disclosed his acts and conduct immediately preceding and at the time of the accident.'' The defendant, here, by the testimony of Henry Webb has done so. There was, therefore, no room for the presumption of due care. (*Mundy* v. *Marshall,* 8 Cal.2d 294 [65 P.2d 65].)

Whether the error in giving the instruction is prejudicial, depends on the facts of the particular case. (*Speck* v. *Sarver,* 20 Cal.2d 585 [128 P.2d 16].) As further pointed out in *Rozzen* v. *Blumenfeld, supra,* at page 288:

''In determining whether prejudice resulted in a particular case, the vice of the criticized instruction should be kept in mind. The party against whom the presumption is invoked must not only overcome by a preponderance of the evidence the case presented by the opposing party, but must also overcome the presumption, for in the language of the instruction, conflicting evidence must be weighed 'against the presumption, and any evidence that supports the presumption, to determine which, if either preponderates.' In circumstances such as are here presented, paraphrasing the language in *Speck* v. *Sarver, supra,* page 588 (quoting from *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 P. 884]), whether either of the defendants took ordinary care of his own concerns while operating his vehicle on the particular occasion in question was a matter of evidence established by such defendant and witnesses called by him, and 'in the face of this evidence there was no room for any presumption.' Or, as was said by Division Three of this court in an opinion prepared by Presiding Justice Shinn in *Ford* v. *Chesley Transportation Co., supra,* at page 553, 'The effect of the instruction was to add strength to defendant's claim that it was free from negligence. The considerations pointing to negligence would have to overcome not only those pointing to a contrary conclusion, but also the presumption that defendant was not negligent.' '' It is therefore necessary to analyze the quoted instruction and relate it to the evidence and certain other instructions given. In the instant case, there was only conflicting evidence on the crucial fact which would have been determinative of defendant's negligence or the plaintiff's contributory negligence, whether the signal light was red or green. In *Cole* v. *Ridings,* 95 Cal.App. 2d 136 [212 P.2d 597], the appellant, a minor, collided with a motorcycle operated by the respondent. The evidence relating to the circumstances of the collision was highly conflicting; in reversing the judgment for the respondent, the court pointed out at page 139 and 140:

"It is argued that in the circumstances presented herein, the jury might well have found the evidence of respondents' negligence to preponderate had the instruction not been given; but faced with the requirement laid down therein, the jury apparently concluded that the evidence of negligence, although sufficient to preponderate over conflicting evidence, was insufficient to preponderate over such conflicting evidence plus the presumption of due care.

"In *Clary* v. *Lindley*, 30 Cal.App.2d 571, 573 [86 P.2d 920], the following appears:

" ' "A disputable presumption is a substitute for proof of facts. It is a species of evidence that may be accepted and acted upon when there is no other evidence to uphold the contention for which it stands," (*Noble* v. *Key System, Ltd.*, 10 Cal.App.2d 132, 137 [51 P.2d 887].) It may be controverted by evidence. (Code Civ. Proc., § 1961.) It is dispelled when evidence is produced by the party or his witnesses covering the subject of the presumption. (*Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884].) When there is a conflict in the evidence introduced by opposing parties, there is no room for the presumption (*Kelly* v. *Fretz*, 19 Cal.App.2d 356 [65 P.2d 914]), for the simple reason that one side or the other would be forced to introduce evidence to controvert other evidence plus a presumption. (*Paulsen* v. *McDuffie*, 4 Cal.2d 111 [47 P.2d 709]; *Mundy* v. *Marshall*, 8 Cal.2d 294 [65 P.2d 65].)'

"In *Barker* v. *City of Los Angeles*, 57 Cal.App.2d 742, 749 [135 P.2d 573], the court discussed an instruction similar to that here under review, to wit: 'From apparently conflicting opinions of appellate courts of California, the following rules may be adduced:

" '(1) It is error for the trial court to give an instruction such as that set forth above where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time of the accident. (*Speck* v. *Sarver*, 20 Cal.2d 585, 587, 588 [128 P.2d 16]; *Campbell* v. *City of Los Angeles*, 28 Cal.App.2d 490, 491 [82 P.2d 720].)

" '(2) Whether the giving of such an instruction when the evidence of the plaintiff discloses the acts and conduct of the injured party at the time of the accident constitutes prejudicial error depends on the circumstances of each case. (*Speck* v. *Sarver, supra.*)' "

We think in applying the above rules to this case, it was prejudicial error for the court to give the above quoted instruction on the presumption of due care. In *Speck* v. *Sarver,* 20 Cal.2d 585 [128 P.2d 16], cited by the defendant here, the error in giving the instruction was mitigated by further instruction to the jury that they were to determine whether or not due care had been exercised.

There is merit in plaintiff's contention that under the circumstances of the accident she is entitled to the presumption of due care. (*Scott* v. *Burke,* 39 Cal.2d 388 [247 P.2d 313]; *De Yo* v. *Umina,* 121 Cal.App.2d 505 [263 P.2d 623]; *Powley* v. *Appleby,* 155 Cal.App.2d 727 [318 P.2d 712].)

In view of the foregoing the judgment must be reversed. Judgment reversed.

Dooling, J., and Draper, J., concurred.