[Civ. No. 16626. Second Dist., Div. One. Feb. 21, 1949.]

ETHEL CARR, as Guardian, etc., Appellant, v. MELVIN WILSON DUNCAN, Respondent.

Kenneth J. Murphy for Appellant.

Hunter & Liljestrom and C. R. Liljestrom for Respondent.

WHITE, J.—On October 3, 1946, Walter E. Carr was struck by an automobile driven by defendant, Melvin Wilson Duncan, sustaining injuries which caused his death. This action was instituted by Ethel Carr (now known as Ethel Hayn) as general guardian of Douglas E. Carr, minor son of decedent, to recover damages for the alleged wrongful death. Ethel Carr is the mother of the minor, Douglas E. Carr, and was formerly the wife of the deceased father, but had been divorced from him prior to the accident. The case was consolidated for trial with an action by Lois Estes and her minor son, Jimmy Dale Estes, for damages arising out of the same accident. The verdict of the jury was for the defendant in both cases. A motion for new trial was granted as to the minor Jimmy Dale Estes and denied as to the other plaintiffs. From the judgment entered on the verdict in the wrongful death action Ethel Carr, as general guardian of the minor son of decedent, has appealed.

The accident occurred on Clara Street in the city of Bell Gardens in Los Angeles County, at about 10:40 p. m. The night was clear. There were no street lights or other artificial illumination in the vicinity. The area is a residential district as defined by the Vehicle Code (§ 90). At the scene of the accident Clara Street consists of a 20-foot paved strip and a 7-foot macadam shoulder on the south side only. There are no sidewalks. The deceased and Lois Estes were walking easterly on the south side of the street, the deceased carrying Jimmy Dale Estes, the child of Lois Estes. The deceased was

to the left of Mrs. Estes. The defendant was driving his automobile in the same direction in which the pedestrians were walking. There were no other vehicles on the street at the time of the accident.

As grounds of reversal it is urged that the court committed prejudicial error (1) in receiving testimony of a police officer as to a conversation had with the deceased at the hospital, in which decedent stated that the child warned him, ''There is a car coming,'' and decedent said that he ''didn't pay any attention to the car.''; and (2) in permitting testimony by the officer as to the presence of a heel mark on the pavement. The main issue with respect to the question of contributory negligence on the part of deceased and Mrs. Estes was whether they were guilty of contributory negligence in walking upon the ''main traveled portion'' of the street, which we take to mean the paved portion rather than the 7-foot macadam shoulder. With reference to the conversation in the hospital, the trial court, in his memorandum of decision on motion for new trial, stated that the testimony ''should not have been admitted at all under the authorities in this state, but not considering such testimony and considering all the other testimony and the instructions given, I am forced to conclude from all the other evidence that both pedestrians were negligently walking on the main traveled portion of the highway.''

It has been held in this state that admissions, or declarations against interest, of a decedent are not admissible against his heirs or representatives in an action for his wrongful death under section 377 of the Code of Civil Procedure, for the reason that the right of action given by such section is a new right of action distinct from any which the deceased might have maintained had he survived his injuries. (*Marks* v. *Reissinger,* 35 Cal.App. 44, 53, 54, 55 [169 P. 243], citing *Earley* v. *Pacific Elec. Ry. Co.,* 176 Cal. 79 [167 P. 513, L.R.A. 1918A 997], and *Hedge* v. *Williams,* 131 Cal. 455 [63 P. 721, 64 P. 106, 82 Am.St.Rep. 366].) Research has disclosed no later California cases on the subject. While declarations against interest have been held admissible where the action was under a death statute which was considered merely as providing for the survival of the decedent's right of action for the negligence which occasioned his death, they have also been admitted in England, Canada, and many states of the Union under statutes patterned after Lord Campbell's Act, where it was recognized that although the form of the action was new, since the right of action did not exist where

the decedent himself could not have sued, such right was in succession to or substitution for his right of action, so that his declarations against interest were admissible on the theory of privity between the deceased and his personal representative. In other words, while the statute gives a new right, it is essential to that right that the act, neglect or default shall be such as would have entitled the party injured to maintain an action and recover damages, and that issue is the same whether he dies or not; that if he dies, the dependents have to prove the affirmative of that issue; and that statements made by him are admissible and may be relevant upon it. See annotation in 114 American Law Reports, page 921, from which it would appear that the California cases cited follow the rule of a distinct minority. It would seem that since contributory negligence of a decedent may defeat the action of his heirs or representatives, evidence of his declarations or admissions pertinent to the issue of contributory negligence should be admitted, in an action under section 377 of the Code of Civil Procedure, just as evidence of the defending party's declarations are admitted against him on the issue of negligence.

True, the action is a new action and distinct from that which the decedent had until he died, but the elements necessary to establish liability on the part of the defendant are precisely the same. If the evidence will not support a verdict in a personal injury action, it manifestly follows that it should not support a verdict in a wrongful death action. So long as the defense of contributory negligence is permitted in a wrongful death suit, evidence on that subject which would be competent in a personal injury suit by the deceased in his lifetime, it would seem, should also be competent in an action for his wrongful death.

Assuming that the evidence complained of was erroneously admitted, the question then presented is whether such error was prejudicial; that is, whether upon an examination of the entire cause, including the evidence, this court is of the opinion that the error complained of has resulted in a miscarriage of justice. ■ Prejudice is not presumed from the mere fact of error; it is incumbent upon the appellant to show that the error has resulted in a miscarriage of justice. (Cal. Const., art VI, § 4½; *Santina* v. *General Petroleum Corp.,* 41 Cal.App.2d 74 [106 P.2d 60] ; *Murphy* v. *Retirement Board,* 49 Cal.App.2d 58 [121 P.2d 101] ; *Parker* v. *Swett,*

188 Cal. 474 [205 P. 1065]; *Coleman* v. *Farwell*, 206 Cal. 740 [276 P. 335].)

 The evidence in the cause may be epitomized as follows: Mr. Duncan, the defendant, testified that he was driving, with a companion, east on Clara Street at 20 to 25 miles per hour. His lights were on low beam. His brakes were good. He had driven over the same street on many previous occasions. He did not see the pedestrians until just immediately before he struck them—about 5 feet or so, but he would not be sure. He knocked the deceased about 10 feet. He was not blinded by any other lights and there were no obstructions to prevent his seeing the pedestrians. His lights on low beam illuminated the road ahead and the shoulder. He also testified that it all happened so fast he did not know whether he saw the people before he hit them; that he was unable to apply his brakes; "it happened so that I just turned and then I stopped in the other lane." At another point he testified that he first saw the pedestrians, it seemed to him, 5 or 10 feet before the impact; that he was able to turn his vehicle a little, very little, to the left before the impact. The right headlight of his car was smashed and there was a small indentation on the left front of the hood but he did not know whether it was caused by the impact of the body or by buckling of the metal. Mr. Duncan testified that at all times he was driving on the paved portion, about 2 feet from the center line. Eldora Duncan, who was riding with defendant, testified that the car was at all times on the paved portion of the street or highway; that she did not see the figures of the pedestrians until they loomed up in front of them "just instantaneously" before the accident happened.

Officer C. D. Caulkins, of the California Highway Patrol, testified to the physical evidence disclosed by investigation at the scene of the accident and also to the conversation with deceased, the admission of which is assigned as prejudicial error. He testified to the presence of light "burn marks" on the pavement caused by the application of brakes, which marks indicated that the right wheels of defendant's car were about 3 feet north of the south edge of the pavement at the moment the decedent was struck by the right front portion of the vehicle. He also found a blood spot on the pavement, and some marks of dirt and a heelprint about 3 feet north of the south edge of the highway. His testimony with reference to the conversation with the decedent at the hospital was as follows:

"A. I asked him what happened and he stated that he was walking east on Clara with his girl friend and that he was carrying the child and that the child was looking over his shoulder. The child said, 'There is a car coming,' and he said, 'I didn't pay any attention to the car.' I said, 'Well, didn't you know that it was dangerous to walk on the highway and that you should be on the shoulder and that the safest place would be for you to be on the other side of the street?'

"MR. MURPHY (Plaintiff's Counsel): Now, just a moment, if the Court please, I move to strike that as an invasion of the law under Section 564, this being a residential district. In a residential district they can walk exactly where they were walking on the right side of the road.

"THE WITNESS: That is just the conversation that I had.

"THE COURT: Yes, I will give them your instruction.

"THE WITNESS: In fact, I said to him, 'Don't you think you are apt to live longer the next time if you do walk over on the north side of the street, whether it is the law or not?

"MR. MURPHY: Let's not argue, Officer, just have the conversation please.

"THE WITNESS: And he said, 'Just didn't pay any attention to the car,' and I said, 'Well, there isn't anything we can do about it now. . . .' "

We have considered and decided on the merits the assignment of error in admitting the evidence of the conversation despite the fact that at the trial counsel for appellant stated, with respect to the conversation, "I have no objection to it. I withdraw any objection I have." It is argued that later appellant's counsel moved to strike the testimony. This is incorrect. Counsel asked to strike that portion of the conversation wherein the officer told the decedent he should have been walking on the other side of the street, on the ground that under the Vehicle Code, section 564, in a residential district, pedestrians may walk on the right side. The jury was properly advised as to this matter in the court's instructions.

We have concluded, from an examination of the entire record, including the evidence, that the asserted errors did not result in a miscarriage of justice, and hence the judgment may not be reversed. The only admission or declaration against interest contained in the conversation of decedent with the police officer was that the child said, "There is a car coming," and decedent "didn't pay any attention to the car." Decedent's companion, Mrs. Estes, testified at the trial

that the child said, "There is a car coming," and that she and decedent did nothing but continue to walk. She also testified at the coroner's inquest that after her child said that a car was coming, "He had the whole road, there wasn't a car coming either way and we didn't even look. . . . We never turned around. We didn't think anything about it." It thus appears that the evidence complained of was merely cumulative, and corroborative of the uncontradicted testimony of Mrs. Estes, herself a plaintiff, which the jury seemingly believed. Moreover, it contained no admission by decedent that he was walking on the pavement, and hence could not have materially affected the outcome on that issue. █ As to the asserted error in admitting evidence of a heel mark, the objection to such evidence goes to its weight rather than its admissibility (*Bowker* v. *Illinois Electric Co.*, 112 Cal.App. 740 [297 P. 615] ; *Flach* v. *Fikes*, 204 Cal. 329 [267 P. 1079]).

For the foregoing reasons, the judgment is affirmed.

York, P. J., concurred.

Doran, J., concurred in the judgment.