[Civ. No. 21931. Second Dist., Div. One. July 16, 1957.]

ALLEN BRUMLEY et al., Respondents, v. BARNEY O'HERN TRUCKING COMPANY (a Corporation) et al., Defendants; BARNEY O'HERN, Appellant.

[Civ. No. 21932. Second Dist., Div. One. July 16, 1957.]

LILLIAN JEAN HODGSON, a Minor, etc., et al., Appellants, v. COAST TRUCK LINES (a Corporation) et al., Respondents.

King & Mussell and John Lewis King for Appellants.

George A. Kuittinen for Respondents.

DRAPEAU, J. pro tem.*—These two cases are for personal injuries, death, and property damages from a collision of a truck and trailer and a tractor and semitrailer.

As commonly referred to in the trucking industry, a truck is a propelling unit with a body for carrying cargo, to which a trailer also carrying cargo may be attached. A tractor is a propelling unit, carrying no cargo, to which a semitrailer may be attached. A semitrailer has no motive power, carries cargo, and is fastened to and rides upon a "fifth wheel" on the rear end of a tractor.

On July 23, 1954, at about 1:30 o'clock in the morning, George Henry Hodgson was driving a Kenworth truck and trailer on State Highway 101, southerly from Buellton in Santa Barbara County.

Allen Brumley was driving a Peterbilt tractor with a Fruehauf semitrailer on the same highway, northerly towards Buellton.

*Assigned by Chairman of Judicial Council.

The two vehicles came together with terrific force.

Mr. Hodgson was killed instantly.

Mr. Brumley is living, but he has little recollection of what happened at the time of, or before the accident. This is not an unusual circumstance, with traumatic injury to the temporal lobes of the cortex of the brain.

Mr. Hodgson had driven his truck and trailer from Los Angeles to San Jose, and had delivered a consignment of glass in San Jose on July 22, 1954, the day before the accident. While his truck and trailer were being unloaded and loaded in San Jose he was off duty. But he said he got only about an hour's sleep while in San Jose. He started for Los Angeles in the afternoon.

North of Buellton he passed a truck outfit, cut in a little too close, and ran an oncoming vehicle onto the shoulder of the highway.

The place of the collision was a two-lane highway. The two rigs were for all practical purposes demolished. "They were all smashed to pieces, and their cargoes were strewn all over the road."

Another truck driver, Kenneth Thayer, was going north, following Mr. Brumley and his tractor and semitrailer. Mr. Thayer testified that Brumley was on his own, right-hand side of the pavement until the very moment of the collision; that it happened on a "big, bending curve to the left, going north, a big sweeping turn."

Another witness, a fellow employee of Brumley's, who had been following him up the coast driving another tractor and semitrailer, testified that he did not see the accident because Thayer got in front of him. But he said that when he got to the place all of the wreckage was in the north-bound lane on the east side of the highway. All of the witnesses agree that the wreckage was mostly on the east side of the highway, and that as it was being cleared away passing traffic had to use the west side of the highway.

Mr. Hodgson's three minor children and his widow brought their action against Brumley, the driver, and Coast Line Truck Service, Inc., a corporation, owner of the tractor and semitrailer.

Mr. Brumley and Coast Line Truck Service, Inc., brought their action against the administrator of Hodgson's estate and Barney O'Hern, a natural person, owner of the Kenworth truck and trailer.

The two actions were consolidated for trial, and the issues

of negligence, contributory negligence, unavoidable accident and damages tendered by the pleadings were submitted to a jury.

It took nearly three weeks to try the case. Each side endeavored to prove that its trucking rig was on its own side of the road at the time of the collision. Experts testified to opinions from gouge, and other marks upon the paving, and from other physical evidence at the place. The jury had to say which rig, if either, was on the right side of the road.

The jury returned two verdicts: Verdict one, against the Hodgsons and Coast Line Truck Service, Inc. And verdict two, for damages against O'Hern as follows: for Brumley $58,373.84, and for Coast Line Truck Service, Inc. $23,348.77.

The Hodgsons and Mr. O'Hern appeal from the judgments against them.

Two grounds of appeal are urged: That it was error, first, for the trial court to admit as against O'Hern certain testimony in evidence; and, secondly, to give an instruction quoted later.

The testimony that appellants contend should not have been admitted in evidence against O'Hern is as follows:

Witnesses testified to a number of statements made by Hodgson: In San Jose: that he was sleepy, had a sore finger, was overdosing himself with pills to keep awake; he was so sleepy he couldn't find his gears, he had called his boss on the telephone, and all his boss would say was that he had another load for the truck waiting in Los Angeles, and "don't go to sleep on the road." On the road south: that he was sleepy, he "borrowed" a hitch hiker from another trucker to ride with him as far as San Luis Obispo, "to keep him awake," his finger bothered him and he needed a pill to keep awake, the clock on the truck was broken so that he could drive as fast as he wanted to, and he asked another driver to wake him up if he should come upon him sleeping in his truck along the roadside.

The instruction complained of is as follows:

"The law presumes that Allen Brumley, the plaintiff in action No. 631651, and the defendant in the other action No. 631699 consolidated for trial, in his conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law.

"These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other

evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with my instructions on the burden of proof.''

During the trial a witness testified that Brumley had told him that when the accident happened he was on his own side of the road and the truck and trailer hit him there.

So, say appellants, with this testimony in the record it was error for the trial court to give the instruction.

Referring, first, to the claim of error in the admission of evidence. Were Hodgson's statements admissible in evidence against O'Hern, his employer, and owner of the truck and trailer?

None of them, of course, were a part of the *res gestae*. (See Code Civ. Proc., §§ 1850, and 1870, subd. 7.)

As stated by our Supreme Court in *Lane* v. *Pacific Greyhound Lines,* 26 Cal.2d 575 [160 P.2d 21], declarations of an agent made within the course of his employment and while the matter in controversy was pending are admissible in evidence, although not part of the *res gestae*.

In this case Hodgson, driver of the truck and trailer, was the agent of O'Hern the owner, and his statements tended to prove that O'Hern knew, or should have known, that the man was working too long hours, and was not in physical condition to be driving a trucking rig. (Code Civ. Proc., § 1870, subd. 5.)

As driving motor vehicles on our California highways becomes more and more dangerous, our law must be vigilant to see that truck owners use reasonable care to make sure that their employees operating these ponderous machines are reasonably in possession of their mental and physical faculties, do not work such long hours as to impair those faculties, and are competent to operate vehicles that in an instant of inattention or carelessness become instruments of death and destruction. Perhaps the pitiful story of George Henry Hodgson, as he drove to his death down Highway 101 in July of 1954, may be the means of more forcefully impressing the importance of that duty upon the trucking industry.

It is also to be noted that no instruction was requested, telling the jury that they should not consider Hodgson's statements as against O'Hern.

Moreover, after an examination of the entire case this court

could not say, assuming it was error to admit the statements, that there resulted a miscarriage of justice that would require reversal of the judgment against O'Hern. (Code Civ. Proc., § 475; Const., art. VI, § 4½; *Carr* v. *Duncan*, 90 Cal.App.2d 282, 285 [202 P.2d 855].)

This has been a most distressing case to review, as it must have been for the trial judge and jury to try.

Here we have Mr. Hodgson's widow and children left helpless and penniless. On the other hand, we have Mr. Brumley, probably unable to ever earn a living, and also with a wife and children.

That it was hard for the jury is shown by the record. One juror got sick, and the case was submitted by stipulation to the 11 jurors remaining; two of them voted for the Hodgsons, and nine of them voted for the verdicts stated.

But when we consider the fact that one witness, presumably disinterested, saw Brumley on his own side of the road right up to the moment of the collision, we could not say, in view of express constitutional mandate, that the judgments are in any respect a miscarriage of justice.

Coming finally to the instruction complained of. The case of *Gigliotti* v. *Nunes*, 45 Cal.2d 85 [286 P.2d 809], settles the contention that it was error to give this instruction. For that case holds that a person is entitled to the presumption defined in the instruction notwithstanding the fact that other witnesses for the parties testified to alleged acts of negligence.

In this case Mr. Brumley testified that he had no recollection of the accident. The fact that another witness testified that on another occasion Mr. Brumley remembered some of the details of the accident does not deprive him of the benefit of the presumption.

The attempted appeals from the orders denying motions for a new trial are dismissed.

The judgments are, and each of them is, affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 6, 1957, and appellants' petition for a hearing by the Supreme Court was denied September 11, 1957.