[Civ. No. 10516. First Appellate District, Division One.—July 14, 1938.]

ANTONIA I. MOELLER, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

Wm. M. Abbott, Cyril Appel and Ivores R. Dains for Appellants.

Faulkner & O'Connor for Respondent.

GRAY, J., *pro tem.*—The jury awarded plaintiff $5,000 against defendants Market Street Railway Company, August Stoltz, its motorman, and Daniel Cassotta, its conductor, for personal injuries, which she claimed to have received because defendants negligently started a street car as she was alighting therefrom. From the judgment entered accordingly, defendants appeal, assigning as error (1) the insufficiency of the evidence; (2) certain instructions given and refused; (3) excessive damages, and (4) denial of their motion for a new trial.

As is usual in this type of litigation, the respective versions of the accident, while each sufficient to support a verdict, are in irreconcilable conflict. Plaintiff testified that she had been sitting near the rear exit of a street car which was south bound on San Bruno Avenue in San Francisco; that the street car stopped at Arleta Street in response to her signal; that the conductor was then on the front platform conversing with the motorman; that a number of passengers got off at the front end; that as she, in leaving the street car, placed one foot on a rear step and the other on the ground, the street car started with a jerk and she was thrown to the pavement. Her testimony was corroborated by a salesman, and by the proprietor of a gasoline service station, who each stated that while talking to the other at the station he saw the car stop, several passengers get off, the car start as plaintiff was stepping off, plaintiff fall, and the crew of the car leave its front end in going to plaintiff's aid. The salesman did not know from which end the other passengers disembarked, but the proprietor said that they left from the rear. In contradiction of plaintiff, the conductor stated that he was standing on the rear platform; that plaintiff suddenly attempted to alight from the rear exit, when the car was yet four or five feet from its stop; that but one stop was made and that no other passengers got off. The motorman likewise swore that he made a single stop, in compliance with the company's rules, but not in response to any signal and that no passengers unloaded at the

front end. After a painstaking analysis of the evidence in fuller detail defendants argue that while the evidence produced by plaintiff superficially is sufficient to sustain the verdict, yet it is incredible for the following reasons: Plaintiff differs with the proprietor as to the place of departure of the other passengers. She and her witnesses disagree with the car crew as to the departure of such passengers. The absence of such passengers from the scene, after the accident, is unexplained. The testimony of herself and her witnesses as to the movement of the car cannot be reconciled with its known stopping place. The distance of the gasoline station from the street car made it impossible for her witnesses to have observed what they testified. Obviously such matters do not prove that plaintiff's evidence is inherently improbable but merely concern the credibility of her witnesses and the weight and effect to be given to her evidence. The decision upon such considerations is committed to the jury and its verdict is final and conclusive thereon. (*Skulte* v. *Ahern*, 22 Cal. App. (2d) 460 [71 Pac. (2d) 340].) Plaintiff's evidence is sufficient to support the jury's finding of defendants' liability.

 The defendant Cassotta claims that the judgment against him must be reversed as there is no evidence that he was in anywise negligent. In support thereof, he points out that the evidence shows that he gave no signal to the motorman. But, since as conductor he was in charge of the street car, it was his duty, before permitting the motorman to start the street car, to ascertain if any passenger was attempting to disembark, and his failure so to do was negligence. (*Hoffman* v. *Pacific Elec. Ry. Co.*, 45 Cal. App. 751 [188 Pac. 597]; *Gainer* v. *United Railroads of S. F.*, 58 Cal. App. 459 [208 Pac. 1013].) He further contends that the court erred in instructing the jury that it was an admitted fact that he was operating, managing, and controlling the street car, because his answer contains no such admission. His answer, however, does admit that he was the conductor on such street car and that he was acting within the scope of his employment as such at the time of the accident. His duties as conductor gave him the control and management of the operation of the street car (12 Cor. Jur., p. 413), and therefore the instruction was correct.

■ The court gave several instructions, which are not criticized, to the effect that the Market Street Railway Company, as a carrier of passengers, was required, in the operation of its street car, to use the highest degree of care for plaintiff's safety, but it refused other instructions which stated that the conductor and motorman were required only to exercise ordinary care. Defendants assign such refusal as error upon the argument that the law imposes upon the employees actually operating the street car a lesser degree of care than it does upon their employer, a common carrier. But, on reason, such cannot be the law. Plaintiff's injuries were caused by the crew's operation of the street car, in which the company, being an artificial entity without physical existence, could and did not directly participate. The latter, as employer, can only be held liable if the former, its employees, were negligent. (*Bradley* v. *Rosenthal*, 154 Cal. 420 [97 Pac. 875, 129 Am. St. Rep. 171]; *Thompson* v. *Southern Pac. Co.*, 31 Cal. App. 567 [161 Pac. 21]; *Fimple* v. *Southern Pac. Co.*, 38 Cal. App. 727 [177 Pac. 871].) Under the refused instructions, the employees would be exonerated if they used ordinary care, while inconsistently the company might be held for its failure to use the highest degree of care. Obviously, since the company can only operate its street cars by its employees, the latter must be held to the same degree of care as the former in order to secure the performance of the duty imposed upon a common carrier by section 2100 of the Civil Code. (*Little* v. *Los Angeles Ry. Corp.*, 94 Cal. App. 303 [271 Pac. 134].) In an action against a carrier alone, it has been held erroneous to instruct that its employees are required only to exercise ordinary care. (*Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390 [63 Pac. 682]; *Frost* v. *Los Angeles Ry. Co.*, 165 Cal. 365 [132 Pac. 442].) In actions against a carrier and its employees, the latter have been held to the same degree of care as the law imposes upon the former. (*McNeil* v. *East Bay Street Rys., Ltd.*, 220 Cal. 591 [32 Pac. (2d) 598]; *Bezera* v. *Associated Oil Co.*, 117 Cal. App. 139 [3 Pac. (2d) 622].)

■ The following instruction on the doctrine of *res ipsa loquitur* was given: " . . . A *prima facie* case for the plaintiff is established when the plaintiff shows that she was injured while being carried as a passenger by the defend-

ant, Market Street Railway Company, and that the injury, if any, was caused by the act of the carrier in the exclusive control of the movement of the car used in its business. In such a case there is a *prima facie* presumption of negligence which throws upon the carrier the burden of showing the injury was sustained without negligence on the part of the carrier.'' Substantially, the same instruction was approved in *Jones* v. *United Railroads of S. F.*, 54 Cal. App. 744 [202 Pac. 919]. However, as defendants argue, the use of the word ''presumption'' was erroneous and the word ''inference'' should have been substituted therefor. (*Dowd* v. *Atlas T. & A. Service Co.*, 187 Cal. 523 [202 Pac. 870].) But this error, under the evidence, was not prejudicial and therefore does not warrant a reversal. (*Lawrence* v. *Pickwick Stages, Northern Division, Inc.*, 68 Cal. App. 494 [229 Pac. 885]; *Atkinson* v. *United Railroads of S. F.*, 71 Cal. App. 82 [234 Pac. 863]; *Harvey* v. *San Diego Elec. Ry. Co.*, 92 Cal. App. 487 [268 Pac. 468]; *Even* v. *Pickwick Stages System*, 109 Cal. App. 636 [293 Pac. 700]; *Hilson* v. *Pacific G. & E. Co.*, 131 Cal. App. 427 [21 Pac. (2d) 662].) ▋ Defendants further complain that the instruction erroneously threw upon them the burden of proving their freedom from negligence if plaintiff's evidence tended to prove that her injury was caused by the act of the carrier, while in exclusive control of the car's movement. They argue that a correct statement of the doctrine would require the jury, before applying it, to first find as a fact, after weighing all of the evidence, that her injuries were so caused. This same argument was considered by this court in *Lynch* v. *Market Street Ry. Co.*, 130 Cal. App. 433 [19 Pac. (2d) 1009], and there held untenable. ▋ An instruction that the law presumes that the carmen used the requisite care and acted as reasonably prudent persons was properly refused as the doctrine of *res ipsa loquitur* raised an inference of negligence. (*Smith* v. *Hollander*, 85 Cal. App. 535 [259 Pac. 958].) There is no error in the instructions which requires a reversal.

▋ Immediately after her fall, plaintiff was taken by ambulance to an emergency hospital, where she remained for seven hours and was then removed to another emergency hospital. Later in the evening she was taken to her home. On the next day she was visited by a physician in whose care

she continued until the trial. The evidence, without conflict, shows that she sustained multiple contusions of her head, back and buttocks, which, while temporarily painful, healed normally and without any permanent ill effects. Upon his first visit, she complained to her attending physician of severe headaches, dizziness and nausea, and told him that she had been unconscious following the accident. Upon the basis of these symptons, he expressed the opinion that she had suffered a concussion of the brain. The car crew, the ambulance attendants and the emergency doctor each testified that at the time of his observation she was conscious. An expert for defendants swore that there can be no concussion without unconsciousness. These contradictions merely raised a conflict which left to the jury's decision the correctness of the diagnosis. The concussion cleared up in due time without any residual ills, except possibly occasional headaches. Plaintiff evidently did not consider the concussion as serious, for she failed to include it among the injuries specified in her complaint.

The principal item of damage claimed by her was that she had suffered a miscarriage as a result of her fall. Plaintiff testified that at the time of the accident she was pregnant of four and one-half months' duration. A doctor, who had examined her several months before, stated that he then thought her pregnant. The emergency doctor said that she was not bleeding from the vagina nor complaining of abdominal pains when he examined her at the first emergency hospital. Her physician, on his first visit, found her bleeding profusely from the vagina and complaining of pains in the lower abdomen and then diagnosed her condition as an incomplete miscarriage. Not having seen her previously, his knowledge of her pregnancy was acquired from her. Such bleeding and complaints continuing for twelve days, he had her removed to a hospital where under an anaesthetic he dilated and curetted her womb, removing tissue which upon visual examination he determined to be a part of the afterbirth. Her testimony that a dead baby was then taken out of her is worthless, as the operation was performed while she was under an anaesthetic. She remained in the hospital for five days and then was taken to her home, where she was confined to her bed wholly for two months and partially for a third month. At the time of trial she was twenty-

five or thirty pounds under weight, and her womb was enlarged thrice its normal size, inflamed and painful. Her expenses for medical services, hospitalization, nursing and X-rays amounted to $1476.35. If plaintiff suffered a miscarriage as a result of her fall, the verdict for $5,000 is not excessive. (*Howland* v. *Oakland C. St. Ry. Co.,* 110 Cal. 513 [42 Pac. 983]; *Easton* v. *United Trade School Con. Co.,* 173 Cal. 199 [159 Pac. 597, L. R. A. 1917A, 394].)

The burden of proving not only that defendants' negligence was a proximate cause of her fall, but also that her fall was a proximate cause of her miscarriage, rested upon plaintiff. (*McConnell* v. *Quinn,* 71 Cal. App. 671 [236 Pac. 200].) An obstetrician, called by the defendants, testified without contradiction that a foetus, four and one-half months old, was of such a size that plaintiff would have known of its abortion. Other than her incredible statement that the foetus was removed from her in the operation by her physician at the hospital, there is no evidence that she ever aborted. If her doctor's diagnosis that she was suffering from an incomplete miscarriage when he examined her on the day following the accident, is accepted, it is apparent that any miscarriage must have occurred previously. However, plaintiff did not claim to have miscarried between the accident and her doctor's examination. The emergency physician testified that on his examination made shortly after the accident, she did not show any symptoms of an incipient miscarriage. Her physician stated that in the operation twelve days after the accident, he removed what he concluded after a visual examination was a part of the afterbirth. The worth of this conclusion was attacked by the opinions of two experts for defendants to the effect that in the absence of personal knowledge of pregnancy and the passage of a foetus, the character of the removed tissue could not be determined without a microscopic examination. But even if her doctor's conclusion that he removed part of the afterbirth is accepted as true, yet the time of the miscarriage still remains uncertain. Such uncertainty leaves to surmise and conjecture the causal connection between the fall and the miscarriage. (*Symington* v. *Graham,* 165 Md. 441 [169 Atl. 316]; *Lanham* v. *Illinois Central R. Co.,* 181 Ill. App. 63.)

As the jury, after a consideration of all available testimony, found upon sufficient evidence that defendants' negli-

gence caused plaintiff's fall, there is no reason for a retrial of that issue. Since the evidence is insufficient to support the award of damages, that issue must be retried. This conclusion makes unnecessary the consideration of alleged errors in plaintiff's voluntary statements of poverty in her cross-examination and in the denial of a new trial upon the ground of newly discovered X-rays showing that plaintiff was not pregnant, for such errors only affected the award of damages. The judgment is therefore reversed, and the cause is remanded for a new trial solely upon the issue of the amount of damages, with directions to the trial court to render judgment in favor of plaintiff for the amount of damages so found upon a determination of that issue. (*Pretzer* v. *California Transit Co.*, 211 Cal. 202 [294 Pac. 382].)

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 13, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 12, 1938.