[Civ. No. 17684. Second Dist., Div. Three. Dec. 29, 1950.]

MARY C. FORD, Appellant, v. CHESLEY TRANSPORTATION COMPANY, INC. (a Corporation) et al., Respondents.

Lane & McGinnis and Henry E. Kappler for Appellant.

Bauder, Gilbert, Thompson, Kelly & Veatch and Henry F. Walker for Respondents.

SHINN, P. J.—Plaintiff, Mary C. Ford, appeals from a judgment entered pursuant to a verdict in favor of defendants in an action to recover damages for personal injuries sustained by her in a collision between a car driven by George Sargent in which she was riding as a guest and a truck and trailer owned by defendant Chesley Transportation Company, driven by its employee Porter.

The accident occurred at about 9:30 p. m., on Cherry Avenue, an arterial highway. Cherry Avenue, which is 52 feet in width from one edge of the pavement to the other, runs in a northerly and southerly direction. The office of Chesley, called defendant, was situated in a building on the southeast corner of Cherry Avenue and Twenty-eighth Street. Immediately to the south of the building was a lot used by

the defendant for storing its trucking equipment. Directly opposite on the west side of Cherry Avenue was a vacant lot. There was evidence that the drivers of defendant's trucks drove their equipment off the highway into this vacant lot prior to backing across Cherry Avenue into the parking lot owned by defendant.

On the night in question, defendant Porter was driving defendant's truck and flat-topped trailer with an overall length of 60 feet. There was evidence that the truck and trailer were equipped with headlights which were lighted; three clearance lights on each side of the trailer; two clearance lights in front of the driver's cab; a fixed lamp facing to the rear mounted on a rod in the rear of the driver's cab; and two taillights on the rear of the trailer. With the exception of the headlights and the taillights, the evidence was conflicting with respect to whether they were lighted at the time in question. The truck was equipped with a horn which was not sounded prior to the accident. The truck and trailer were equipped with flares which were not used. There was no street illumination of any kind at the point of accident.

Defendant Porter who had been driving north on Cherry Avenue, drove the truck and trailer approximately 90 feet into the west side vacant lot preparatory to backing it across the street into the east side parking lot. He testified that he then got out, walked to the edge of Cherry Avenue, looked in both directions and that he believed he saw one car approaching from the north and two cars approaching from the south. He then returned to the cab of the truck, having been absent about two minutes, and proceeded to back it toward Cherry Avenue. When he reached the edge of Cherry Avenue, his vision was limited to only a few feet to the north, and he thought he saw two cars approaching from the south, approximately 200 yards away. After hesitating for from 2 to 4 seconds, he proceeded to back the vehicle across Cherry Avenue and when the rear of the equipment reached the center line he again stopped for approximately 5 to 6 seconds, having taken from 10 to 12 seconds to reach that point. He noticed two vehicles approaching from the south, the drivers of which motioned to him to proceed, and he again backed the equipment across the street. Other approaching cars also stopped. As the rear end of the trailer reached the easterly edge of Cherry Avenue, defendant Porter for the first time saw the lights of the car driven by Sargent which was then about 10 to 30 feet to the south traveling at from 30 to 35 miles an

hour. The Sargent car struck the rear left wheels of the truck.

The evidence was uncontradicted that plaintiff was rendered unconscious as a result of the accident and remained in that condition for over two months. She also suffered permanent injuries.

Plaintiff contends that (1) the defendants were guilty of negligence as a matter of law; (2) plaintiff was not guilty of contributory negligence as a matter of law; (3) the trial court committed prejudicial error in giving and refusing to give certain instructions.

It is not material to our decision whether negligence or contributory negligence was proved as a matter of law. It appears from the evidence recited above that there was ample evidence of defendant's negligence and but meager evidence tending to prove contributory negligence on the part of plaintiff. No more need be said as an introduction to our discussion of the instructions. Plaintiff requested an instruction reading: "You are instructed that it is a presumption that the plaintiff Mary Ford was, at the time of the accident, exercising due care for her own safety." This instruction was refused and the court gave the following instruction: "At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof."

Plaintiff's instruction should have been given. Due to her extended unconscious condition she had no recollection whatever as to the circumstances of the accident, nor as to what had taken place during several weeks immediately preceding. Only she could have testified as to any efforts she made to observe any dangerous conditions of traffic which might have prompted her to give warning to Sargent. Under these circumstances she was entitled to the benefit of the presumption. (*Scott* v. *Sheedy*, 39 Cal.App.2d 96 [102 P.2d 575]; *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590].)

It was error for the court to give the instruction which extended to defendant, also, the benefit of the presumption. The driver, Porter, testified fully concerning his conduct in backing the truck and trailer across the highway. The presumption may not be relied on by a party who can and does produce complete and explicit evidence as to his conduct in the premises. The authorities are unanimous to this effect.

 The remaining question is whether it was prejudicial error to give defendant the benefit of the presumption that it exercised due care. We do not doubt that prejudice resulted.

Inasmuch as the question of prejudice depends upon the facts of the particular case it would not be useful to point out the particulars in which the facts of the present case differ from those in which it has been held that the giving of the same instruction, while erroneous, was not prejudicial. From our discussion of the facts which follows, we think that prejudice will appear as clearly as it was shown in the following cases in which the giving of the instruction was held reversible error, namely, *Kelly* v. *Fretz,* 19 Cal.App.2d 356 [65 P.2d 914]; *Campbell* v. *City of Los Angeles,* 28 Cal.App. 2d 490 [82 P.2d 720]; *Clary* v. *Lindley,* 30 Cal.App.2d 571 [86 P.2d 920].

It would not be a reasonable supposition that the jury found plaintiff to have been guilty of contributory negligence. There was no evidence that George Sargent had been driving in a manner that should have caused, or did cause, plaintiff apprehension for her safety. There was no evidence that she saw the truck and trailer in time to have warned Sargent of its presence, or if she had seen it that she did not believe Sargent would bring his car safely to a stop. As to these matters, the presumption operated in her favor and tended to acquit her of contributory negligence. The reasonable explanation of the verdict is that the jury found defendant not to have been guilty of negligence. It must be assumed that the jury in considering this issue, in accordance with the court's instruction, gave some weight to the presumption that defendant used due care. This gave the defendant a decidedly unfair advantage. To an extent that it is impossible to determine, application of the presumption tended to minimize in the minds of the jurors the dangerous nature of defendant's operation, and the precautions that should have been taken. Passage along an arterial highway was entirely blocked off late at night. The driver alone had the duty not only of performing a difficult operation with his equipment, but at the

same time observing traffic conditions—an exceedingly difficult assignment. He had flares on his equipment, but these were not used. He was engaged in a procedure which was customary with defendant, and yet did not have the assistance of a flag man to warn approaching motorists. His trailer was merely a long flat platform, and in this respect differed from those most commonly used for heavy trucking on the highways. When it is considered that the truck and trailer obstructed the entire street from curb to curb, under the conditions described, it is quite clear that it was the duty of defendant to take extraordinary care and caution to avoid accidents. Even if it had been believed that the driver was doing the best he could, defendant might have been found negligent in not affording him assistance. The jury could reasonably have determined that only a minimum of care was exercised and that defendant was guilty of negligence. But the jurors were confronted with the duty of applying the presumption in defendant's favor to offset this substantial evidence of negligence.

In view of the verdict it is fair to assume that the jury believed the testimony of Porter as to the lighting of the equipment and the manner in which he backed it across the street. In that event there would have been no other evidence to be considered in reaching a decision as to whether he exercised ordinary care. But the jury, under the instruction, was told that the presumption existed in his favor and should be weighed as evidence even as applied to the facts found with relation to Porter's conduct. Herein lies the vice of the instruction. The presumption as applied to plaintiff's case would mean, not that specific conduct on her part would be presumed to be free from negligence, but that in the absence of evidence to the contrary it would be presumed that as a passenger she exercised ordinary care to observe the presence of obstructions in the street and was not guilty of any act or omission inconsistent with the conduct of a reasonably careful person. The presumption has no place in the determination of the question, whether certain acts or omissions, believed by the jury to constitute the conduct of a party, were or were not negligent. The effect of the instruction was to add strength to defendant's claim that it was free from negligence. The considerations pointing to negligence would have to overcome not only those pointing to a contrary conclusion, but also the presumption that defendant was not negligent. In our opinion the error in giving this instruction was clearly prejudicial.

554

Plaintiff's criticism of two other instructions merits attention. ■ Section 1844, Code of Civil Procedure, reads: "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason." At defendant's request the court gave the following instruction: "The testimony of one witness worthy of belief is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony, even if a number of witnesses have testified to the contrary, if from the whole case, considering the credibility of witnesses and after weighing the various factors of evidence, you should believe that there is a balance of probability pointing to the accuracy and honesty of the one witness." The instruction obviously was intended to be applied to the testimony of Porter. If it had been in the language of the section it would have served its purpose. It was improper, however, as suggesting that the testimony of Porter, if believed, "would justify a verdict in accordance with such testimony." The instruction confuses the rule as to the legal sufficiency of evidence with that of the preponderance of the evidence. It is further confusing in that the jury could have believed the testimony of Porter and still have found him to be guilty of negligence. The instruction was criticized in *Long* v. *Standard Oil Co.,* 92 Cal.App.2d 455, 462 [207 P.2d 837].

■ Plaintiff requested the following instruction: "Irrespective of any statutory requirements which may or may not impose certain obligatory conduct in connection with the backing of a vehicle across a public highway, the operator of such a vehicle is obligated to exercise that degree of care which a reasonable person under similar circumstances would exercise to protect another from harm." This instruction was refused, and at defendant's request the court gave one reading as follows: "You are instructed that there is no law which requires the operator of any kind of motor vehicle to display flares to indicate the presence of a moving vehicle on the highway." The wrong instruction was given. The one requested by plaintiff stated the law correctly. (*Squires* v. *City of Los Angeles,* 100 Cal.App.2d 708 [224 P.2d 774].) To say that "there is no law" requiring certain conduct might be understood by jurors, or some of them, to mean that the omission of such conduct would not be a breach of duty. It would not have been unreasonable for the jury to conclude that in the exercise of ordinary care flares should have been used by defendant.

We do not decide that the errors in giving the last two instructions would require a reversal of the judgment. Reversible error, however, resulted from the giving of the first quoted instruction. It is not improbable that the verdict would have been in plaintiff's favor, had it not been given. It is unnecessary to consider other claims of error. The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied January 16, 1951, and respondents' petition for a hearing by the Supreme Court was denied February 26, 1951. Traynor, J., and Spence, J., voted for a hearing.