[Civ. No. 8629.   Third Dist.   Apr. 10, 1956.]

MICKEY NUNNEMAKER et al., Appellants, v. GUY
HEADLEE, Respondent.

Burke & Rawles for Appellant.

Geary, Spridgen & Moskowitz for Respondent.

Don Lake and Van Linton as Amici Curiae on behalf of Respondent.

SCHOTTKY, J.—This is an appeal by plaintiffs from a judgment based on a jury verdict in favor of defendant in an action for personal injuries sustained by plaintiff wife when she was struck by defendant's automobile.

The accident occurred in Mendocino County March 4, 1951, on California Highway 28, which runs in a general northerly and southerly direction, and at a location where the prima facie speed limit of 55 miles per hour is applicable. Plaintiff wife had been a passenger on a Mendocino County bus traveling in a southerly direction. The bus had stopped on the main traveled portion of the highway in a position where it occupied most of the southbound traffic lane for the purpose of discharging plaintiff. Plaintiff alighted on the west edge of the roadway and stood there until the bus started moving in a southerly direction along the highway, which at that point curves slightly to the right and ascends a slight grade. As soon as the rear end of the bus had passed the plaintiff about a foot or two, she started walking rapidly directly across the two-lane highway in an easterly direction. During this time, she looked both ways along the highway, her last observation in a southerly direction having been made when she was a foot or two to the west of the center line. She then put her head down and continued across the highway in an easterly direction into the northbound lane. She at no time observed the approach of the defendant's vehicle, nor did she at any time stop after she

had commenced crossing from the west edge of the roadway. It had been raining off and on and the pavement was wet.

The defendant was operating his vehicle in a northerly direction. When he first observed the bus, it was moving slowly uphill in its proper southbound lane. He was unable at this time to see the plaintiff because she was screened behind the bus. He first saw her at the moment she appeared in view from behind the bus, when she was walking in an easterly direction and was just about at the white line. He thereupon applied his brakes and swerved to his left in an effort to avoid the collision. In the meantime, the plaintiff continued into the northbound lane and at the last moment stepped or jumped back in a westerly direction into the path of the automobile. The right front of the defendant's vehicle came in contact with plaintiff about on the center line of the highway. The defendant brought his vehicle to a stop in the southbound lane headed northerly, about 60 feet north of the point of impact. According to defendant's testimony, he was traveling at about 40 or 45 miles an hour when he first saw the plaintiff some 30 to 35 feet away from him as she emerged from behind the bus. There was also testimony that defendant was traveling 70 to 75 miles per hour.

Near the scene of the accident there is a dirt roadway which leads from the east edge of the state highway to a parallel county road some 150 feet distant. The road is not publicly maintained. There is a "Trespass at your own risk" sign alongside it facing in a westerly direction. There are no signs on the highway to indicate an intersection or crosswalk.

Other evidence will be referred to in the course of this opinion.

Appellants do not question the sufficiency of the evidence to support the judgment but appellants do contend most earnestly that the court committed prejudicial error in refusing certain instructions offered by them and in improperly giving certain instructions to the jury.

Appellants first complain that the court refused to give an instruction offered by them with respect to the right of way of a pedestrian in an unmarked crosswalk, but instead instructed the jury that a pedestrian must yield the right of way to all vehicles upon the roadway so near as to constitute an immediate hazard and omitted to advise the jury of the exception in a case where a pedestrian is in an unmarked crosswalk. Respondent in reply contends that under the facts of the instant case it cannot be held as a

matter of law or fact that a pedestrian crosswalk existed at or near the scene of the accident.

A crosswalk is defined by section 85 of the California Vehicle Code as either: "(a) That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street. (b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."

Since it is not contended that there was a marked crosswalk in the instant case, a crosswalk could only be found to exist, if at all, by virtue of the provisions of subdivision (a) of said section 85.

To satisfy the statutory definition, there must be a "sidewalk" and an "intersection" at the scene of the accident. Section 84 of the California Vehicle Code defines "sidewalk" as "that portion of a highway, other than the roadway, set apart for pedestrian travel"; and section 86 defines "intersection" as "the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict." Section 81 defines "highway" as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel."

The evidence shows that there was not a "sidewalk" at the site of the accident as no portion of the intersecting driveway was "set apart for pedestrian travel." In order to have an "intersection," there must be at least two "highways." Respondent argues that the intersecting dirt roadway was not a "highway" because it was not "publicly maintained." The county surveyor testified to this effect. Also the sign "Trespass at your own risk" infers that this roadway is not "publicly maintained" or "open to the use of the public for purposes of vehicular travel." Even conceding that the intersecting way was a public road in the sense that it was open to and available for the use of the public, as appellants contend, it was not "publicly maintained" and thus could not qualify as a "highway."

In view of the said provisions of the Vehicle Code and of the evidence in this case a finding that there was an

unmarked crosswalk at the place of the accident could not have been sustained, and there was, therefore, no error in the refusal of the court to give an instruction as to the right of way of a pedestrian in an unmarked crosswalk.

Appellants next contend that it was prejudicial error for the court to give the jury the following instruction:

"The mere fact that an accident happened, considered alone, does not support an inference that some party or any party to this action was negligent."

Appellants argue that inasmuch as respondent admitted that his automobile was on the left side of the road and struck a pedestrian who was crossing the road at a point approximately on the white center line a prima facie case of negligence was made out and hence it was error to give the foregoing instruction.

We are unable to understand how the giving of the instruction complained of could have been prejudicial to appellants in the instant case. It is only in a case where the doctrine of res ipsa loquitur is applicable that the happening of an accident raises an inference that a defendant was negligent. The cases of *Sullivan* v. *Market Street Ry. Co.*, 136 Cal. 479 [69 P. 143], *Moeller* v. *Market Street Ry. Co.*, 27 Cal.App.2d 562 [81 P.2d 475], *Waite* v. *Pacific Gas & Elec. Co.*, 56 Cal. App.2d 191 [132 P.2d 311], and *Smith* v. *Hollander*, 85 Cal. App. 535 [259 P. 958], cited by appellants, involve the doctrine of res ipsa loquitur, which doctrine is not applicable to the instant case.

In the case of *Keller* v. *Pacific Tel. & Tel. Co.*, 2 Cal.App.2d 513 [38 P.2d 182], also cited by appellants, the jury was instructed: "The mere fact that the defendant erected and maintained the pole involved in this case, does not mean that the defendant is negligent, and does not entitle the plaintiff to recover damages from the defendant." However, in that case the very basis of the liability of defendant, if any, was the maintenance of the pole, and the instruction in the form given was plainly erroneous. Similarly, in the case of *Roberts* v. *Salmon*, 66 Cal.App.2d 22 [151 P.2d 556], cited by appellants, an instruction that "the mere fact that the accident in question occurred upon Mr. Tobey's wrong side of the road is not in itself enough to establish liability upon the part of the defendant Mr. Tobey," was properly held to be erroneous.

In the instant case the instruction complained of merely informed the jury that the occurrence of the accident, considered alone, that is, without reference to the evidence

concerning the conduct of either of the parties, did not entitle the jury to infer that either the appellant Mrs. Nunnemaker or the respondent was negligent. Furthermore, the jury was fully and correctly instructed on the burden of proof, proximate cause, negligence, contributory negligence, last clear chance, and other subjects. They were also instructed that they must consider all of the instructions as a whole, and we are satisfied that even if the giving of the instruction complained of was error, which we do not hold, appellants suffered no prejudice therefrom.

Appellants' final contention is that the court erred in giving the following instruction:

"At the outset of this trial each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith in the absence of evidence to the contrary.

"When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumptions to determine which, if either, preponderates. Such deliberations, of course, shall be related to and in accordance with my instructions on the burden of proof."

Appellants argue that it was prejudicial error to give said instruction which they assert told the jury that respondent was presumed to have exercised due care and to have obeyed the law when respondent admitted that at the time of the collision with appellant pedestrian he was driving on the left side of the center line when the highway was wet and when there was evidence that respondent was driving 70 miles per hour in a 55 mile speed zone. (Respondent testified that he was driving from 40 to 45 miles per hour.)

In support of this contention appellants cite *Rozzen* v. *Blumenfeld,* 117 Cal.App.2d 285 [255 P.2d 850], in which the identical instruction here under attack was held to be reversible error. In that case, a judgment in favor of defendant in a personal injury case was reversed because of the giving of this instruction, the court stating at page 287:

"Repeatedly it has been held that the giving of the quoted instruction, or an instruction of similar tenor, is error when thereby the benefit of the presumption of due care is extended to a party who by his testimony or by evidence introduced

in his behalf has disclosed his acts and conduct immediately preceding and at the time of the accident. (*Speck* v. *Sarver,* 20 Cal.2d 585, 587, 588 [128 P.2d 16], and cases cited; *Cole* v. *Ridings,* 95 Cal.App.2d 136 [212 P.2d 597]; *Ford* v. *Chesley Transportation Co.,* 101 Cal.App.2d 548 [225 P.2d 997]; *Wertheim* v. *Mears,* 104 Cal.App.2d 120 [231 P.2d 89].) The precise instruction here under attack was considered in the two last-cited cases and in each case the court on appeal concluded that the giving of the instruction constituted prejudicial error.

.    .    .    .    .    .    .    .    .    .

"In determining whether prejudice resulted in a particular case, the vice of the criticized instruction should be kept in mind. The party against whom the presumption is invoked must not only overcome by a preponderance of the evidence the case presented by the opposing party, but must also overcome the presumption, for in the language of the instruction, conflicting evidence must be weighed 'against the presumption, and any evidence that supports the presumption, to determine which, if either preponderates.' In circumstances such as are here presented, paraphrasing the language in *Speck* v. *Sarver, supra,* page 588, (quoting from *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 P. 884]), whether either of the defendants took ordinary care of his own concerns while operating his vehicle on the particular occasion in question was a matter of evidence established by such defendant and witnesses called by him and 'in the face of this evidence there was no room for any presumption.' Or, as was said by Division Three of this court in an opinion prepared by Presiding Justice Shinn in *Ford* v. *Chesley Transportation Co., supra,* at page 553, 'The effect of the instruction was to add strength to defendant's claim that it was free from negligence. The considerations pointing to negligence would have to overcome not only those pointing to a contrary conclusion, but also the presumption that defendant was not negligent.' " (A hearing was denied by the Supreme Court.)

Appellants also cite *Verhaegen* v. *Guy F. Atkinson Co.,* 126 Cal.App.2d 442 [272 P.2d 855], where the same instruction was given, and the court in reversing a judgment in favor of plaintiff stated at pages 444 and 445:

"Whether the error in giving the instruction is prejudicial depends on the facts of the particular case (*Ford* v. *Chesley Transportation Co.,* 101 Cal.App.2d 548, 552 [225 P.2d 997]; *Cole* v. *Ridings,* 95 Cal.App.2d 136, 140 [212 P.2d 597]).

It is therefore necessary to analyze the quoted instruction, and relate it to the evidence and certain other instructions that were given.

"This instruction was given verbatim in *Rozzen* v. *Blumenfeld,* 117 Cal.App.2d 285 [255 P.2d 850] [hearing denied] and was held to be prejudicial. It was there pointed out (p. 288) that in determining whether prejudice resulted in a particular case, the vice of the instruction must be kept in mind, viz., that 'The party against whom the presumption is invoked must not only overcome by a preponderance of the evidence the case presented by the opposing party, but must also overcome the presumption, for in the language of the instruction, conflicting evidence must be weighed "against the presumption, *and* any evidence that supports the presumption, to determine which, if either, preponderates." ' (Italics added.) Since plaintiff testified fully as to his acts and conduct immediately prior to and at the time of the accident there was no room for the presumption of due care (*Mundy* v. *Marshall,* 8 Cal.2d 294, 296 [65 P.2d 65]). The effect, however, of the instruction was to add strength to plaintiff's claim that he was free from negligence. The considerations pointing to negligence would have to overcome not only those pointing to a contrary conclusion, but also the presumption that plaintiff was not negligent. (*Ford* v. *Chesley Transportation Co., supra,* which dealt with this identical instruction.) It is thus clear that plaintiff received substantial benefit from this portion of the court's charge."

Also cited by appellants in support of their contention that the giving of this instruction was reversible error are: *Ford* v. *Chesley Transportation Co.,* 101 Cal.App.2d 548 [225 P.2d 997], *Tice* v. *Kaiser Co.,* 102 Cal.App.2d 44 [226 P.2d 624], and *Kelly* v. *Fretz,* 19 Cal.App.2d 356 [65 P.2d 914].

Respondent in reply points to several sections of the Code of Civil Procedure. Section 1957 provides that a disputable presumption is evidence. Section 1961 provides that a disputable presumption may be controverted by other evidence. Section 2061, subdivision 2, directs the trial court to instruct the jury "that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds against a less number, or against a presumption or other evidence satisfying their minds."

Respondent argues that the only logical conclusion to be

drawn from these sections is the rule of the Mar Shee and Smellie cases.

In *Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1 [210 P. 269], our Supreme Court, after discussing the statutory presumptions and how they have been applied in cited cases, defined the only circumstances in which a trier of fact properly could hold that an applicable presumption ceased to have significance as evidence in a case, and stated at page 9:

"From the foregoing we deduce that a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case."

And in *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 553 [299 P. 529], the court said that presumptions "do disappear when contradicted or controverted by the evidence of the party relying upon them, *with the qualification stated in the Mar Shee case, . . .*" (Italics ours.)

However, notwithstanding the language of the Mar Shee and Smellie cases, both of which were cases in which the persons in whose favor the disputable presumptions that a person takes ordinary care of his own concerns was invoked, later decisions appear to have limited the application of the presumptions to cases where the conduct either of a decedent or of a person who by reason of incapacity or loss of memory has no recollection of the events was involved. Thus in *Speck* v. *Sarver*, 20 Cal.2d 585, the court said at pages 587-588 [128 P.2d 16]:

"The rebuttable presumption that a person takes ordinary care of his own concerns is declared in section 1963, subdivision 4 of the Code of Civil Procedure. An instruction as to the existence of this presumption may properly be given to the jury in certain situations. (See *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Ellison* v. *Lang Transportation Co.*, 12 Cal.2d 355 [84 P.2d 510]; *Downing* v. *Southern Pac. Co.*, 15 Cal.App.2d 246 [59 P.2d 578].) Such an instruction, however, should not be given where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question. (See cases last cited and also *Mundy* v. *Marshall*, 8 Cal.2d 294 [65 P.2d 65]; *Paulsen* v. *McDuffie*, 4 Cal.2d 111 [47 P.2d 709];

*Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884].)
In the instant case the plaintiffs testified in regard to the
events leading up to the collision. Plaintiff Matthew Speck,
the driver, explained all of his actions. Under such circum-
stances there was no room for the presumption in this case.
What was said in *Rogers* v. *Interstate Transit Co., supra,* is
equally applicable here. It is there stated at page 38: 'At the
trial of this action plaintiff not only testified as to the circum-
stances of the collision between the car he was driving and
the autostage of the defendant, but he produced witnesses
who gave evidence, both direct and on cross-examination, of
his acts and conduct just before and at the time of the collision.
Whether the plaintiff took ordinary care of his own concerns
while operating his car at that particular occasion was a matter
of evidence established by the plaintiff and witnesses called by
him in support of his claim that he did. In the face of this
evidence there was no room for any presumption. If the
evidence on his part showed that he was negligent, then it
cannot be said that the jury, notwithstanding this evidence,
might presume that he was not negligent, or that he took
ordinary care of his own concerns, which amounts to the
same thing. On the other hand, if this evidence showed that
plaintiff was not negligent in the operation of his car at the
time of its collision with defendant's stage, then that fact
was before the jury, not as the result of any presumption,
but in response to testimony of witnesses testifying in the
case. In either event, the jury, in determining whether the
plaintiff was guilty of negligence, would look to and be gov-
erned by the evidence before the court, and not by any pre-
sumption.' In view of the foregoing, the giving of the
instruction complained of was error."

And in the recent case of *Gigliotti* v. *Nunes*, 45 Cal.2d
85, the court said at page 93 [286 P.2d 809]:

"Although there is no room for the presumption where
the driver or other person whose claimed negligence is at
issue himself testifies to his actions at the time involved (see
*Speck* v. *Sarver* (1942), 20 Cal.2d 585, 587-588 [128 P.2d
16]), the rule is established that if such person be deceased or
unable to testify by reason of loss of memory, the fact that
other witnesses for the parties testify fully as to the acts and
conduct of the allegedly negligent person does not deprive
the party relying on the presumption of the benefit thereof
unless the testimony which he himself produces 'under cir-

cumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' "

In view of the foregoing decisions, and particularly those of our Supreme Court, by which we as an intermediate appellate tribunal are bound, we believe that it must be held that in the instant case, in which both respondent and appellants testified fully as to their actions at the time involved, the giving of the instruction here under attack was error. We reach this conclusion with some reluctance as we believe that there is an inconsistency between these later decisions and the code sections hereinbefore referred to. It would seem to us that if, as the code sections indicate, a presumption is evidence, then it is hardly logical to consider that the instruction is erroneous, but if it is not evidence the instruction would be erroneous. Our Supreme Court has never held that it is not evidence, but it has reiterated the statement that there is no room for the presumption where the person whose claimed negligence is at issue testifies as to his actions at the time involved.

Having concluded, as we feel we are bound to do by the decisions hereinbefore referred to, that it was error in the instant case to give said instruction, there remains only the question of whether the giving of it amounted to prejudicial error. The evidence in the case was highly conflicting and there was evidence which pointed strongly to negligence on the part of respondent. If it was error to give to respondent the benefit of the presumption that he exercised "ordinary care for his own concerns and that he obeys the law," and to permit the jury to consider the presumption as prima facie evidence and to weigh the other evidence against the presumption, then it could well be that the jury, relying upon the presumption, determined that respondent was not negligent. Therefore if it was error to give the instruction, as we are compelled by the authorities to conclude that it was, we must also conclude that it was reversible error.

In view of the foregoing the judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 7, 1956, and respondent's petition for a hearing by the Supreme Court was denied June 6, 1956.