[Civ. No. 22201. Second Dist., Div. One. Dec. 5, 1957.]

WALLACE O. POWLEY et al., Appellants, v. HAROLD R. APPLEBY, JR., et al., Respondents.

Carter, Young, Zetterberg & Henrie for Appellants.

Spray, Gould & Bowers for Respondents.

FOURT, J.—Plaintiffs brought an action for damages for personal injuries sustained by the minor plaintiff, Dennis Garrison, when he was struck by an automobile while riding his bicycle. Prior to trial, dismissal was granted as to defendant State Farm Mutual Automobile Insurance Company. Plaintiffs have appealed from the judgment on a verdict in favor of defendants, and have attempted to appeal from the order denying their motion for a new trial.

The collision occurred shortly after noon on July 29, 1954, at the intersection of Williams Street and Illinois Street

in the city of Pomona, California. This area was residential in character; both Williams Street and Illinois Street were paved public highways, 40 feet wide from curb to curb; Williams Street extended in an east-west direction, and dead-ended, forming a "T" intersection at Illinois Street, which extended in a north-south direction; there were no markers, buttons or signs within or adjacent to the intersection; the corner lot immediately west of Illinois Street and north of Williams Street was raised slightly from street level, and contained a hedge approximately 4 feet high which partially obstructed the view of traffic for drivers approaching the intersection in an easterly direction on Williams Street or in a southerly direction on Illinois Street.

At the time of the accident Dennis Garrison was 10 years of age, and Harold R. Appleby, Jr., was 17 years of age.

There is little evidence concerning the activities of the parties immediately prior to and at the moment of the collision.

Dennis Garrison had a new bicycle. He lived on White Avenue, which was one block west of and parallel to Illinois Street. It was his intention to ride around the block before lunch. Dennis testified that he did not remember riding down Williams Street, or whether he was on the right or left side of Williams Street; he could not remember looking before entering the intersection. He said he did not remember how many miles per hour he was going; whether he was pedaling or had applied the brakes on his bicycle. He could not say where the car was in relation to him. He did not know whether the car was moving, and he did not remember seeing the driver of the car. He did recall that he was barely idling when he saw the grille, the headlights and the hood of a car. He had no memory of telling his mother that the driver was looking in another direction and did not see him, or that the car was coming "real fast." He did not remember talking to any policeman after the accident. His first memory after the accident was of having his shirt cut off at the hospital.

Harold Appleby, Jr. had been at his aunt's house on Laurel Avenue, which was one block north of and parallel to Williams Street. He testified that after leaving his aunt's house and driving approximately half a block, he was in high gear when he turned right on to Illinois Street. He accelerated slightly and was traveling in the middle of the southbound lane between 20 and 25 miles per hour as he entered the

intersection of Illinois and Williams Streets. He did not recall looking to the right or left prior to the collision, although he said he caught a glimpse of Dennis out of the corner of his right eye just an instant before the impact, and he heard Dennis scream. He said he did not see Dennis long enough before the collision to know whether he was seated or standing or pedaling, and that when the impact occurred, it felt as if his brakes were holding; that he did not know whether the windshield of his car was clean, or remember whether he was wearing glasses, although his driver's license bore the notation "must wear corrective lenses."

Harold Appleby, Jr., at the trial, initially located the point of impact in Illinois Street, approximately 15 feet north of the intersection, although he admitted that in his deposition he said the collision took place in the northwest quarter of the intersection and then located the point of impact as approximately 10 feet south of an extension of the north curb line of Williams Street and 15 feet east of an extension of the west curb line of Illinois Street.

The automobile came to rest with its front bumper approximately in line with an extension of the south curb line of Williams Street. The bicycle was underneath the front end of the automobile and Dennis was lying in the street in front of and approximately 10 feet south of the automobile, his body having traveled through the air before hitting the pavement.

No other witnesses testified concerning the collision or the events immediately prior thereto, and there is no evidence that there was any disinterested eye witness to the collision.

A police officer, Mr. Root, arrived at the scene shortly after 12:20 o'clock p.m., took pictures, made observations, and stepped off measurements.

As plaintiffs' witness, Officer Root testified that there were skid marks which ran approximately north and south, that the skid mark made by the right-hand wheel commenced approximately one foot to the north of the other skid mark, and he stepped it off as approximately 27 feet long. He also stated there was a gouge mark apparently made by the left pedal of the bicycle in the middle of the two skid marks, and from this he determined that the point of impact was apparently 15 feet to the east of the extension of the west curb line of Illinois Street and 10 feet to the south of the extension of the north curb line of Williams Street—adding that it could have been farther north.

As defendants' witness, Officer Root testified that after the accident he asked Dennis at the Pomona Valley Community Hospital what he was doing at the time of the accident; and that Dennis, in the presence of the admitting nurse and a woman who identified herself as Dennis' mother, said that "he was taking one more ride around the block before putting his bicycle up, so he thought he would go real fast." Officer Root further testified that Dennis stated that usually he stopped at Illinois Street when going east on Williams, but that he thought since the street usually wasn't busy he wouldn't this time, and therefore cut the corner fast, and to quote his expression, "Boom!" Officer Root also stated that from the length of the skid marks he determined that Appleby's car was traveling at a speed of 24 miles; and that the speed limit was 25 miles per hour. A motion to strike this latter testimony on the basis that it invaded the province of the jury was denied. On cross-examination, Officer Root stated that his view of the northwest corner of the intersection was partially obstructed from a position in a car on Illinois Street 100 feet north of the intersection.

Ernestine Powley, the mother of Dennis, testified that she did not recall being present in the room at the hospital when Officer Root questioned Dennis about how the accident happened.

The sufficiency of the evidence to justify the verdict is not questioned by appellants. Appellants do contend the trial court committed prejudicial error in refusing plaintiffs' requested instruction that the minor plaintiff was presumed to have been exercising due care in operating his bicycle at the time of the collision; and in giving the instruction that at the outset both parties were entitled to the presumption of due care. Appellants also contend there was error in failing to allow certain expert testimony to be introduced and in failing to allow the jury to view the scene of the collision.

Plaintiffs requested the following instruction (B.A.J.I. 135-A), which the trial court refused: "The law presumes that (Dennis Garrison) one of the plaintiffs in this action, in his conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the pre-

sumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof."

In lieu of the foregoing instruction, on its own motion the trial court instructed the jury as follows (B.A.J.I. 135) : "At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof."

Appellants assert that the plaintiff Dennis Garrison, having suffered in the accident severe head injuries which caused a loss of memory, was entitled to the benefit of the presumption of due care; and that inasmuch as defendant Harold R. Appleby, Jr., testified fully as to his own conduct prior to and at the time of the accident, he was not entitled to the benefit of the presumption of due care, with the result that the error in refusing plaintiffs' requested instruction was compounded when the court gave an instruction which extended the presumption to include both parties.

Appellants are correct in their contention that it was error to accord the benefit of the presumption to the defendant automobile driver as to whom there were no special circumstances preventing him from testifying fully as to all of the circumstances prior to and through the happening of the accident. It is true that there are cases which have held that the error in giving a party not entitled thereto the benefit of the presumption was not prejudicial. (*Tuderios* v. *Hertz Drivurself Stations,* 70 Cal.App.2d 192, 198 [160 P.2d 554] ; *Speck* v. *Sarver,* 20 Cal.2d 585, 588-589 [128 P.2d 16].) The test appears to be as stated in *Stout* v. *Southern Pac. R.R. Co.,* 127 Cal.App.2d 491, 497 [274 P.2d 194], "Whether the error in the giving of the instruction is or is not prejudicial turns upon the circumstances of the case, including the facts and the remainder of the instructions." (Citing *Speck* v. *Sarver, supra; Ford* v. *Chesley Transp. Co.,*

101 Cal.App.2d 548 [225 P.2d 997]; *Rozzen* v. *Blumenfeld,* 117 Cal.App.2d 285 [255 P.2d 850].)

We are of the opinion that there was substantial prejudice to the plaintiffs in giving the defendant the benefit of the presumption when all of the various factors in the instant case are considered. (See *Ford* v. *Chesley Transp. Co., supra*; *Zollars* v. *Barber,* 140 Cal.App.2d 502 [295 P.2d 561]; *Nunemaker* v. *Headlee,* 140 Cal.App.2d 666 [295 P.2d 438]; *Hensley* v. *Harris,* 151 Cal.App.2d 821 [312 P.2d 414]; *Burns* v. *Churchill,* 152 Cal.App.2d 491 [313 P.2d 575]; *Nahhas* v. *Pacific Greyhound Lines,* 153 Cal.App.2d 91 [313 P.2d 886].)

█ The presumption originally was applied under circumstances where there was a complete lack of testimony as to the conduct of a decedent. The presumption has been held not to be available when a fact proved by a party or his witness is wholly irreconcilable with the presumption, (see *Mar Shee* v. *Maryland Assurance Co.* (1922), 190 Cal. 1, 9 [210 P. 269]); or when a litigant relying upon the presumption, introduced evidence contrary to the fact presumed, (see *Tice* v. *Kaiser Co.* (1951), 102 Cal.App.2d 44 [226 P.2d 624]); or to establish a conflict in the evidence, (see *Mundy* v. *Marshall* (1937), 8 Cal.2d 294 [65 P.2d 65]); or when the litigant invoking the presumption has introduced evidence encompassing the subject matter of the presumption, (see *Stout* v. *Southern Pac. R.R. Co., supra*).

However, more recent cases involving decedents have somewhat modified the effect of these rulings. In *Anthony* v. *Hobbie* (1945), 25 Cal.2d 814 [155 P.2d 826], the court in holding that plaintiff was entitled to the presumption of due care because the evidence was not wholly irreconcilable with the exercise of ordinary care by the decedent said (at page 820), "Certainly if he was not guilty of contributory negligence as a matter of law, there is no evidence completely refuting the presumption that he was not."

In *Gigliotti* v. *Nunes* (1955), 45 Cal.2d 85 [286 P.2d 809], it was held to be prejudicial error to refuse the instruction merely because other witnesses testified fully as to acts and conduct of the party unless his evidence was wholly irreconcilable with the presumption. Recently, in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 733 [306 P.2d 432], after reviewing a record where witnesses of the decedent testified as to all events, the Supreme Court in affirming an order granting a new trial " 'solely' because the court felt

that 'the jury was not properly instructed' ", appróved the giving of an instruction of due care on the part of deceased at the time of the accident, stating (at page 736), ". . . the benefit of the presumption is available if such person be deceased and the testimony of plaintiffs' witnesses respecting the deceased's acts and conduct at the time involved is not 'wholly irreconcilable' with such presumption." (See also *Heffington* v. *Paul*, 152 Cal.App.2d 235 [313 P.2d 157].)

In *Scott* v. *Sheedy* (1940), 39 Cal.App.2d 96 [102 P.2d 575], the court analyzed the reasons for the rule stated in *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590], that the decedent was entitled to the presumption of due care, notwithstanding the evidence of other witnesses, because all possible facts relating to the negligence of the party were not before the court; and then concluded (at page 101), ". . . we feel it can make no difference whether the injured party dies or is incapacitated by loss of all memory of the circumstances of the accident, the result of brain injury from the collision."

Some cases have appeared to limit the use of the presumption in situations involving loss of memory to cases in which the party has produced no witnesses who testified as to events prior to or at the time of the impact. See *McNear* v. *Pacific Greyhound Lines*, 63 Cal.App.2d 11, 15 [146 P.2d 34] ; *Duvall* v. *T.W.A.*, 98 Cal.App.2d 106, 111 [219 P.2d 463] ; *Ford* v. *Chesley Transp. Co.*, *supra.* However, in each of these cases the facts indicate no witnesses actually had testified for the party sustaining injuries concerning the circumstances surrounding the accident. The applicable rule is stated in *Ford* v. *Chesley Transp. Co.*, *supra*, (at p. 552) to be, "The presumption may not be relied on by a party *who can and does produce complete and explicit evidence as to his conduct* in the premises." (Emphasis added.)

There are some cases holding the presumption to be applicable in circumstances wherein the facts concerning the happening of the collision were not fully covered by witnesses of the party sustaining a loss of memory. (See *Russell* v. *Anderson*, 101 Cal.App.2d 684, 696 [226 P.2d 350] ; *Ermdjian* v. *Interstate Bakery Corp.*, 153 Cal.App.2d 590, 600 [315 P.2d 19].)

In *Scott* v. *Burke*, 39 Cal.2d 388 [247 P.2d 313], an investigating police officer testified that he interviewed the defendant driver in the hospital some three or four hours after the accident, and was told by the driver that he evidently had

gone to sleep. In the Scott case the driver testified he had no recollection of the accident although he did remember that there was very little traffic on the road when he took the wheel; that he did not remember applying the brakes or being interviewed by the police officer; that he did remember being taken to the hospital and arriving there; that his highest speed was 60 miles per hour; and that in his best opinion he did not fall asleep prior to the accident. The jury was held to have been properly instructed that the res ipsa loquitor doctrine was applicable, thereby raising an inference that the defendant driver was negligent; and it was contended that it was error under such circumstances to give an instruction that the defendant driver was entitled to the presumption of due care. The Supreme Court held (at page 393) it was proper to instruct the jury that "if the jury believed that defendant as a result of the shock of the accident was unable to remember and testify as to his own conduct or other facts of the accident then a presumption arose that he 'was obeying the law and was exercising ordinary care and doing such acts as an ordinarily prudent person would have done in the same circumstances.' " The court then proceeded to explain (at page 398) as follows: ". . . just as either an inference or a presumption may outweigh positive evidence adduced against it by the opposing party, so may either outweigh the other; i.e., it is for the trier of fact to determine under the circumstances of each case whether to give greater weight to an inference than to a disputable presumption which conflicts therewith, or vice versa."

After holding it was error to have given both parties the benefit of the presumption of due care where only one party claimed to have sustained a loss of memory, the court in *Zollars* v. *Barber, supra,* carefully considered whether the effect was prejudicial to the party claiming to have sustained the loss of memory where she fully testified as to her actions prior to the accident and where there was a conflict in the evidence as to her unconsciousness. The court concluded (at p. 507), ". . . the instruction on the presumption of due care should have been conditioned on the jury's believing that she was unconscious. Although in that respect the instruction may have been somewhat too favorable to plaintiff it cannot be said as a matter of law that the two distinct errors must have cancelled each other out in their effect upon the jury."

*Hensley* v. *Harris, supra,* is another case in which the police officer testified that the party claiming loss of memory told

him at the hospital that on the day of the accident he was traveling 25 miles per hour and also told him other details of the accident and of the time immediately prior thereto. Under the instruction given, each party received the benefit of the presumption of due care; and, in reversing, the court held that whether a loss of memory had in fact been suffered was a question of fact and that it was grave error to take this vital factual question from the jury. The court then explained (at p. 918), ". . . proper instructions respecting the presumption of due care would have stated that only the defendants were seeking the benefit of the presumption and that they would be entitled to it only in case it was determined by the jury that Harris [defendant] because of loss of memory due to the accident, as he testified, was unable to recollect and relate what his actions were up to the moment of the collision."

The recent case of *Brumley* v. *Barney O'Hern Trucking Co.,* 152 Cal.App.2d 514 [314 P.2d 200], involved a party with little recollection of what happened at the time of, or before the accident. There was evidence that said party previously had made statements that when the accident happened he was on his own side of the road and that he was hit there, and it was contended, with this testimony in the record, that it was error for the jury to be instructed that he was entitled to the presumption of due care. In holding the instruction to have been given properly, this court through Mr. Justice Drapeau (pro tem.), said (at page 557), "Coming finally to the instruction complained of. The case of *Gigliotti* v. *Nunes,* 45 Cal.2d 85 [286 P.2d 809], . . . settles the contention that it was error to give this instruction. For that case holds that a person is entitled to the presumption defined in the instruction notwithstanding the fact that other witnesses for the parties testified to alleged acts of negligence.

"In this case Mr. Brumley testified that he had no recollection of the accident. The fact that another witness testified that *on another occasion Mr. Brumley remembered some of the details of the accident* does not deprive him of the benefit of the presumption." (Emphasis added.)

It remains to be determined whether, under the facts of this case, the prejudicial effect of instructing the jury erroneously that each party was entitled to the benefit of the presumption of due care at the outset, may have been overcome by any of the other instructions given in this case. The verdict in this case can reasonably be accounted for only on the theory

that the jury made an implied finding that plaintiff Dennis Garrison was guilty of contributory negligence. Our independent examination of each of the instructions given has disclosed errors in the record which are more serious and even more prejudicial than those which have been called to the attention of the court by counsel upon this appeal.

Instructions 37 and 38 are herein set forth in order that a proper evaluation may be made of the effect of certain other instructions upon the jury.

"37. If a party to this action violated any of the statutes just read to you, a presumption arises that he was negligent. This presumption is not a conclusive one. It may be overcome by other evidence showing that, under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence.

"(In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise.)"

"38. However, in this action, a violation of law is of no consequence unless it was a proximate cause of (or contributed as a proximate cause to) an injury found by you to have been suffered by (the plaintiff) Dennis Garrison."

Instruction Number 36 was requested by defendants and as given by the court in modified form, reads as follows: "Section 530 of the California Vehicle Code was in full force and effect at the time of the happening of this accident and read in part as follows:

"(b) . . . No vehicle shall *at any time* be driven to the *left* side of the roadway when the view is obstructed upon approaching within 100 feet of an intersection. . . ." (Emphasis added.)

Section 530 of the Vehicle Code pertains generally to limitations on overtaking and passing vehicles traveling in the same direction on the same roadway (and to some other situations not applicable to the instant case).

We believe the jury should have been instructed that the applicable law is set forth in section 525 of the Vehicle Code, the pertinent provisions of which are: "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

. . . . . . . . . . . .

"(2) When placing a vehicle in a lawful position for, and

*when such vehicle is lawfully making a left turn.''* (Emphasis added.)

Under the instruction given, the only lawful manner of making a left turn would be to proceed around an imaginary button in the center of the intersection. As applied to the facts of this case, this would mean that if Dennis was at any time in the northwest quarter of the intersection he was in violation of the provisions of section 530 of the Vehicle Code. Actually, under the provisions of section 525 of the Vehicle Code, Dennis could properly have been in the southeasterly diagonal one-half of the intersection (as shown by the shaded area in the diagram herein set forth), *if* the jury determined that he was in the process of making a lawful left turn.

This error was not corrected by Instruction Number 35, which correctly stated the applicable law to be as set forth in section 46 of the Vehicle Code defining the term, ''intersection,'' and in section 540 of the Vehicle Code prescribing the required position and method of turning left at intersections.

It has been well stated in *Sebrell* v. *Los Angeles Ry. Corp.,* 31 Cal.2d 813, 817 [192 P.2d 898], that ''Instructions that are contradictory in essential elements may warrant the reversal of a judgment on the ground that it can-

not be ascertained which instruction was followed by the jury. (Citing cases.) ▇ In determining whether there is such a conflict the decisive question is whether the instructions read as a whole and in the light of the circumstances of the case in which they were given, are apt to confuse a person of ordinary intelligence.''

▇ Certainly there can be no question that a conflict was created by the instructions given; one of the essential elements in determining whether Dennis Garrison was guilty of contributory negligence was whether he could lawfully be where he was at the time of the happening of the collision.

Other incidents of the trial, including various rulings on the admissibility of evidence assigned as error, may not occur in the challenged form on the new trial which may be had, and hence are not now discussed.

It is not improbable that the verdict would have been different had the jury been properly instructed.

The judgment is reversed. The order denying the motion for new trial being nonappealable, the purported appeal therefrom is dismissed.

White, P. J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied December 31, 1957, and respondents' petition for a hearing by the Supreme Court was denied January 28, 1958. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.