[Civ. No. 9025.   Third Dist.   Oct. 7, 1957.]

CHARLES R. BERTOLI et al., Appellants, v. LOREN GERALD HARDISTY et al., Respondents.

Lounibos & Lounibos and Herbert Chamberlain for Appellants.

Weinstock, Anderson, Maloney & Chase and Harold Chase for Respondents.

PEEK, J.—This is an appeal by plaintiffs from an adverse judgment in an action to recover damages for personal injuries. No attack is made upon the sufficiency of the evidence. Their main contentions are that the court erred in its instructions to the jury on the presumption of due care, contributory negligence and the right of way at intersections.

The accident occurred at the intersection of Steele Lane and Highway 101, a freeway in Sonoma County. From photographs included in plaintiffs' opening brief, Steele Lane appears to be an ordinary two-way street running in an easterly-westerly direction. Highway 101 is a four-lane divided freeway running in a northerly-southerly direction, having so-called traffic islands at its intersection with Steele Lane. Immediately to the east of the freeway and running parallel thereto is Armory Drive, while immediately to the west, and also parallel thereto, is Cleveland Avenue, Thus, before actually entering Highway 101 from the west, it is necessary to first cross Cleveland Avenue. Both of these streets are separated from the freeway by a wire fence. Metal stop signs are located at the intersection of Steele Lane and Cleveland Avenue and the intersection of Steele Lane and the freeway.

As a result of the injuries suffered by him, plaintiff Charles Bertoli was unable to testify at the trial. Mrs. Bertoli, who was riding with her husband, gave somewhat vague and conflicting testimony concerning the events preceding the accident. According to her testimony, she and her husband were driving east on Steele Lane. They came to a stop at Cleveland Avenue and looked for traffic on the freeway, proceeded forward and likewise stopped before entering the same. However, in a deposition taken some time before the trial, she stated that the only stop they made was at Cleveland Avenue; that they then proceeded across the westerly, or southbound, lanes of the freeway and either paused or did not pause at the traffic island in the center thereof. In her deposition she stated first that their car did not pause at the traffic island, and then that it might have stopped at the same. She further testified that her husband did not speed up as he turned to the north on the freeway. Again referring to her deposition, she stated he did speed up after pausing at the traffic island. Her testimony was indefinite as to whether she saw the defendant driver's car just before the impact, and she was uncertain as to whether or not she had seen another automobile immediately to the rear of defendant driver's car. Mrs. Bertoli further testified that her husband was 72 years of age at the time of the accident

and was somewhat hard of hearing. The remaining evidence presented by plaintiffs related to the injuries suffered by them and to certain physical facts concerning the collision which were given by Officer Quirolo of the Highway Patrol as observed by him following the accident. The officer testified that the point of impact was approximately on the easterly shoulder of the highway and 27 feet north of the center line of Steele Lane; that the right wheels of defendants' car laid down skid marks of 71 feet from that point south; that the left wheels made a shadow skid mark of 25 feet approximately in the center of the right skid mark; that the Bertoli car had been driven sideways for approximately 55 feet and was lying on its left side; that Mr. Bertoli had been thrown out of the car and was unconscious; that Mrs. Bertoli remained in the car; and that the Hardisty car had stopped approximately 35 feet from the point of impact and was headed in a southeasterly direction.

The defendant driver, Loren Hardisty, testified he was 18 years of age at the time of the accident; that in order to obtain more power and faster acceleration he had had the engine rebuilt and had equipped the car with two additional carburetors and an additional exhaust and muffler; that with him at the time of the accident were two friends, Glen Hareland and William Kuhn, whom he had met the night before at a hard top club meeting; that all were high school students; that he and his two companions, one of whom was eating a hamburger and the other drinking a coke, were proceeding northerly on the outside lane of Highway 101; that visibility was clear; that he was well acquainted with the intersection and saw the "Xing" sign on the pavement; and that his speed when approaching the intersection was approximately 40 or 45 miles per hour. When he was about 225 feet south of the intersection he saw the Bertoli car just west of the highway; that it proceeded into the intersection without stopping and continued on across the southbound lanes; that when the Bertoli car entered the safety island area, he was approximately 100 to 150 feet south of the intersection traveling at about 40 miles per hour; that he sounded his horn and the Bertoli car appeared to slow down, then accelerated its speed and entered the northbound traffic lane. He was then about 75 or 90 feet south of the intersection; that he immediately sounded his horn and applied the brakes, continuing in the outside lane until just before the collision when he swerved to the right in an attempt to turn into Steele Lane.

The left front of his car struck the right side of the Bertoli car. He estimated the speed of the Bertoli car to be 10 or 15 miles per hour at the time of the impact. In a statement given on the following day he stated that the first time he saw the Bertoli car was when he was about 75 to 100 feet south of Steele Lane and that it was then crossing the southbound lane at a speed of not more than 15 miles per hour.

Loren's two companions corroborated in general his testimony. Kuhn, in addition, testified that the Bertoli car did not stop before entering the highway. Further testimony was given by a schoolmate of Loren's who was following Loren in his own car at a distance of approximately 100 feet on the inside lane of northbound traffic. This testimony was substantially the same as that given by Loren.

Plaintiffs' first contention is that the trial court erred in modifying their proposed instruction on the presumption of due care which (as requested) was restricted to them, to include ". . . the conduct of all parties to the action."

In the recent case of *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809], the court held:

"Although there is no room for the presumption where the driver or other person whose claimed negligence is at issue himself testifies to his actions at the time involved (see *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 587-588 [128 P.2d 16]), the rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' (*Westberg* v. *Willde* (1939), 14 Cal.2d 360, 365-368 [94 P.2d 590]; *Mar Shee* v. *Maryland Assur. Corp.* (1922), 190 Cal. 1, 9 [210 P. 269]; *Chakmakjian* v. *Lowe* (1949), 33 Cal.2d 308, 313 [201 P.2d 801].) Plaintiffs' evidence in the present case is not irreconcilable with the presumption."

Viewing the facts as summarized in light of the rule set forth in the Gigliotti case, the benefit of the presumption clearly was not available to the defendants, since not only Loren himself whose "claimed negligence is at issue," but also the witnesses who were called in his behalf, gave detailed testimony concerning his actions at the time involved. The

vice of giving the instruction under the circumstances was to give added weight to Loren's claim that he was free of negligence. Thus, as the court said in *Ford* v. *Chesley Transp. Co.*, 101 Cal.App.2d 548, 553 [225 P.2d 997]. "The considerations pointing to negligence would have to overcome not only those pointing to a contrary conclusion, but also the presumption that defendant was not negligent." And, as this court held in *Nunnemaker* v. *Headlee*, 140 Cal.App.2d 666, 676 [295 P.2d 438], under such circumstances ". . . it could well be that the jury, relying upon the presumption, determined that respondent was not negligent." (See also *Norton* v. *Futrell*, 149 Cal.App.2d 586 [308 P.2d 887].)

Since the prejudicial effect of the instruction as given compels a reversal of the judgment, it is unnecessary to discuss the other instructions attacked by plaintiffs.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied October 30, 1957, and respondents' petition for a hearing by the Supreme Court was denied December 4, 1957.