[Civ. No. 9123.   Third Dist.   Mar. 5, 1958.]

JOHN R. EASTTEAM, Appellant, v. O. L. HULL, Respondent.

Burke & Rawles for Appellant.

Geary, Spridgen & Moskowitz and S. Richard Shostak for Respondent.

PEEK, J.—Plaintiff appeals from an adverse judgment entered pursuant to the jury's verdict in an action for personal injuries.

The facts, which are not in dispute, show that defendant was driving his automobile east on Talmage Road, a state highway running east and west in Mendocino County, at or near a point where the highway intersects at right angles a grade crossing of the Northwestern Pacific Railroad. The highway at this point is approximately 21 feet wide, straight, level, and surfaced with asphalt, and at the time of the accident was not posted.

As a result of the injuries he suffered, which included a brain concussion, plaintiff was unable to testify concerning the events immediately preceding the accident nor to give any of the facts and circumstances surrounding the same. His only testimony, except that having to do with his injuries, was that at the time of the accident he was employed by the railroad company as a section foreman; that he remembered receiving a call advising him that signals at the crossing were not lighted; and that he left his home at about 7 p. m. to go to the crossing and repair the same.

Defendant testified as follows: He and his wife were driving easterly on Talmage Road behind a pickup truck. When the truck turned off of the highway approximately 200 feet west of the crossing, defendant accelerated his speed to about 30 miles an hour. He met a westbound car 50 or 100 feet west of the crossing. A second westbound car, driven by Orville Elliott, was about 250 or 300 feet east of the tracks. It was dark and he was driving with his headlights on low beam. During the last 100 feet of his approach to the crossing

his view of rail traffic approaching from either side was limited to about 200 feet by reason of buildings on either side of the highway. When he was about two car lengths from the crossing, he first saw the plaintiff who was a step from the north edge of the pavement and was running. At that time the Elliott car was approximately 75 to 170 feet east of plaintiff. Defendant applied his brakes and turned slightly to the right. Plaintiff kept the same pace and appeared to be looking east. About six feet east of the crossing defendant's automobile collided with the plaintiff and carried him along for approximately 30 feet to where the defendant brought his car to a stop and plaintiff fell to the ground in front of the car.

A highway patrolman, who arrived at the scene of the accident shortly afterward and conducted an investigation, was called by plaintiff. He testified he observed tire marks made by defendant's car extending 48 feet in the eastbound lane with more footage on the east side of the tracks than on the west and with a gap in the marks where the car crossed the tracks. He found plaintiff lying on the southerly edge of the pavement in front of the defendant's car which was then approximately 5 feet south of the center lane. This testimony was the only evidence offered by plaintiff relative to the facts and circumstances surrounding the accident.

Mr. Elliott, the driver of one of the westbound cars, testified on behalf of defendant that he saw defendant's car collide with plaintiff in the eastbound lane of the highway about 3 or 4 feet from the center line; that he, Elliott, was proceeding at a speed of 25 or 30 miles an hour westerly on Talmage Road and first saw the plaintiff some 50 feet ahead of him; that plaintiff hesitated at the edge of the highway and then started running across; that the collision occurred about 10 feet east of the crossing, and defendant's car traveled 10 or 15 feet before it came to a stop; and that the headlamps were lighted on his car as well as on the defendant's car.

■ Plaintiff's first contention concerns the comments by the court and defense counsel during the course of plaintiff's argument to the jury. The gist of that argument was that defendant was traveling in excess of the 15-mile-per-hour prima facie speed limit prescribed by section 511, subdivision (a), paragraph (2), of the Vehicle Code, and that there was no reason for plaintiff to know or assume that defendant ". . . was going to violate that speed law." Thereupon defendant's counsel objected to the comment as ". . . an

improper statement of the law. There was no violation of any speed law," and cited plaintiff's counsel's statement as misconduct. During the colloquy which ensued, plaintiff's counsel stated he felt the court should clarify defense counsel's statement, to which the court replied, "Well, it's my feeling Mr. Burke, if you want my thoughts, that the speed limit to which you were referring had no application to this case." Mr. Burke then replied, "Very well, your Honor. I wish to take exception to the Court's remarks before the jury for the purpose of the record." Thereafter plaintiff's counsel moved for a mistrial upon the grounds of misconduct of the court and of defendant's counsel in stating to the jury that the 15-mile-speed limit rule did not govern in this case. The motion was denied.

It cannot be said that the comment of the court and defense counsel amounted to misconduct, but undoubtedly the court erred when in effect it instructed the jury that the speed limit referred to by plaintiff's counsel was not applicable to the facts in this case. (*McVea* v. *Nichols,* 105 Cal.App. 28 [286 P. 761].) However it becomes unnecessary to determine whether or not such error was prejudicial since the case must be reversed for other reasons hereinafter discussed.

█ Plaintiff's second contention is that the court erred prejudicially in instructing the jury on its own motion on the presumption of due care that ". . . each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law." On several recent occasions this court has had before it similar situations, and in each we have held upon the rule stated in *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809], that the giving of such instruction was prejudicially erroneous. (See *Bertoli* v. *Hardisty,* 154 Cal.App.2d 283, 286 [315 P.2d 890]; *Nunnemaker* v. *Headlee,* 140 Cal.App.2d 666, 676 [295 P.2d 438]; and *Norton* v. *Futrell,* 149 Cal.App. 2d 586, 590 [308 P.2d 887].) In each case it was noted that the benefit of the presumption clearly was not available to one whose claimed negligence is at issue where he as well as witnesses called on his behalf gave detailed testimony concerning his actions at the time involved. We further held that to give the instruction under such circumstances was to give added weight to defendant's claim that he was free of negligence and concluded with the words of the court in *Ford* v. *Chesley Transportation Co.,* 101 Cal.App.2d 548, 553 [225 P.2d 997]: "The considerations pointing to negligence would

have to overcome not only those pointing to a contrary conclusion, but also the presumption that defendant was not negligent.'' Under such circumstances, we said in the Nunnemaker case, it could well be that the jury relying upon the presumption determined that the defendant was not negligent.

Since it is our conclusion that the case must be reversed, it becomes unnecessary to discuss the further question raised by plaintiff in regard to the denial of his motion for a new trial upon the basis of newly discovered evidence.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied April 2, 1958, and respondent's petition for a hearing by the Supreme Court was denied April 30, 1958.